ROBERT S. CLARK (4015)
DANIEL E. BARNETT (8579)
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Tel: (801) 532-7840
Fax: (801) 532-7750
rclark@parrbrown.com
dbarnett@parrbrown.com

JAMES G. KREISSMAN (*pro hac vice*)
ALEXIS COLL-VERY (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, California 94304
Tel: (650) 251-5000
Fax: (650) 251-5002
jkreissman@stblaw.com
acoll-very@stblaw.com

*Attorneys for Defendants Nu Skin Enterprises, Inc.,
M. Truman Hunt, and Ritch N. Wood*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE NU SKIN ENTERPRISES, INC. SECURITIES LITIGATION<br><br>This document relates to ALL ACTIONS. | Master File No. 2:14-cv-00033-JNP-BCW<br><br>**DEFENDANTS' SUPPLEMENTAL SUBMISSION IN FURTHER SUPPORT OF THEIR OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>Hon. Jill N. Parrish |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I. Curative Disclosures Prevent Subsequent Purchasers From Invoking The *Basic* Presumption Of Reliance Because They Cannot Show The Requisite Market Timing ............................................................................................................................. 2

II. Prior To *Halliburton I* And *Amgen*, Courts Routinely Considered The Timing Of Corrective Disclosures To Shorten Class Periods Where Appropriate .............................. 3

III. In *Wal-Mart* and *Comcast*, The Supreme Court Clarified That District Courts *Must* Answer All Relevant Questions In Connection With Class Certification ................. 5

IV. Neither *Halliburton I* Nor *Amgen* Prohibits A Challenge To Rule 23(b)(3) Predominance Following The Citron Report's Publication ................................................ 7

    A. *Halliburton I* Prohibits Only Loss Causation Arguments at Class Certification; Defendants Do Not Challenge Loss Causation .............................. 7

    B. *Amgen* Prohibits Only Challenges to the Materiality of an Alleged Misrepresentation; Defendants Make No Such Challenge ..................................... 9

    C. *Amgen* Addresses the Court's Concern About the Viability of Any Claims Not Based on *Basic's* Fraud-on-the-Market Presumption ................................... 11

V. Recent Cases, Including *Halliburton II*, Confirm This Court's Duty To Consider Whether The Citron Report Is A Curative Disclosure That Ends The Class Period ......... 12

    A. *Halliburton II* Confirmed That Plaintiffs Must Prove Market Timing for Class Certification ............................................................................................... 12

    B. Since *Halliburton I* and *Amgen*, District Courts Continue to Require That Plaintiffs Prove Market Timing at Class Certification ......................................... 13

CONCLUSION ........................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
　554 F.3d 342 (3d Cir. 2009) ................................................................................................. 4, 6

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
　133 S. Ct. 1184 (2013) ........................................................................................................ passim

*Aranaz v. Catalyst Pharm. Partners Inc.*,
　302 F.R.D. 657 (S.D. Fla. 2014) ................................................................................................. 9

*Basic Inc. v. Levinson*,
　485 U.S. 224 (1988) ............................................................................................................ passim

*Better v. YRC Worldwide Inc.*,
　Civ. Act. No. 11–2072–KHV, 2013 WL 6060952 (D. Kan. Nov. 18, 2013) ........................... 13

*City of Livonia Emps.' Ret. Sys. v. Wyeth*,
　284 F.R.D. 173 (S.D.N.Y. 2012) .................................................................................................. 7

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
　No. 12–5275, 2015 WL 5097883 (D.N.J. Aug. 31, 2015) ..................................................... 7, 13

*Comcast Corp. v. Behrend*,
　133 S. Ct. 1426 (2013) ........................................................................................................... 6, 12

*Eisen v. Carlisle & Jacquelin*,
　417 U.S. 156 (1974) .............................................................................................................. 5-6

*Erica P. John Fund, Inc.* v. *Halliburton Co.*,
　131 S. Ct. 2179 (2011) ........................................................................................................ passim

*GAMCO Investors, Inc. v. Vivendi, S.A.*,
　917 F. Supp. 2d 246 (S.D.N.Y. 2013) ....................................................................................... 10

*GAMCO Investors, Inc. v. Vivendi, S.A.*,
　927 F. Supp. 2d 88 (S.D.N.Y. 2013) ......................................................................................... 11

*Ganino v. Citizens Utils. Co.*,
　228 F.3d 154 (2d Cir. 2000) ...................................................................................................... 10

*George v. China Auto. Sys., Inc.*,
　No. 11 CIV 7533(KBF), 2014 WL 173417 (S.D.N.Y. Jan. 15, 2014) ...................................... 14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
　134 S. Ct. 2398 (2014) .................................................................................................. 2-3, 12-13

*In re Amer. Italian Pasta Co. Sec. Litig.*,
 No. 05-0725-CV-W-ODS, 2007 WL 927745 (W.D. Mo. Mar. 26, 2007) ..............................4, 6

*In re BP P.L.C. Sec. Litig.*,
 MDL No. 10-md-2185, 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) .................................6, 11

*In re Data Access Sys. Sec. Litig.*,
 103 F.R.D. 130 (D.N.J. 1984)................................................................................................ 3-5

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*,
 247 F.R.D. 32 (D.D.C. 2008)....................................................................................................2, 4

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
 No. 10 Civ. 3461(PAC), 2015 WL 5613150 (S.D.N.Y. Sept. 24, 2015)..............................9, 13

*In re Kulicke & Soffa Indus., Inc. Sec. Litig.*,
 No. 86-1656, 1990 WL 1478 (E.D. Pa. Jan. 9, 1990)...................................................................5

*In re LTV Sec. Litig.*,
 88 F.R.D. 134 (N.D. Tex. 1980) ...................................................................................................4

*In re Micron Tech., Inc. Sec. Litig.*,
 247 F.R.D. 627 (D. Idaho 2007) ..................................................................................................4

*In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*,
 251 F.R.D. 656 (D. Utah 2008) ....................................................................................................4

*In re Pfizer Inc. Sec. Litig.*,
 282 F.R.D. 38 (S.D.N.Y. 2012) ..................................................................................................14

*In re Ribozyme Pharm., Inc. Sec. Litig.*,
 205 F.R.D. 572 (D. Colo. 2001) ..................................................................................................5

*In re Williams Sec. Litig.—WCG Subclass*,
 558 F.3d 1130 (10th Cir. 2009) ....................................................................................................8

*LaGrasta v. First Union Sec., Inc.*,
 No. 2:01-CV-251-FTM29DNF, 2005 WL 1875469 (M.D. Fla. Aug. 8, 2005) ................ 4-5, 12

*Lerch v. Citizens First Bancorp, Inc.*,
 144 F.R.D. 247 (D.N.J. 1992)......................................................................................................5

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
 No. CV–10–J–2847–S, 2014 WL 6661918 (N.D. Ala. Nov. 19, 2014) .................................7, 9

*Ludlow v. BP, P.L.C.*,
 800 F.3d 674 (5th Cir. 2015) ............................................................................................... 7, 9-10

*Lumen v. Anderson*,
   80 F.R.D. 451 (W.D. Mo. 2012) .......................................................................................15

*Maiman v. Talbott*,
   No. SACV 09-00012 AG (ANx), 2011 U.S. Dist. LEXIS 98243 (C.D. Cal. Aug. 29,
   2011) ........................................................................................................................ 14-15

*Plumbers & Pipefitters Nat'l Pension Fund v. Burns*,
   292 F.R.D. 515 (N.D. Ohio 2013) ...................................................................................13

*Simpson v. Specialty Retail Concepts*,
   149 F.R.D. 94 (M.D.N.C. 1993) .......................................................................................5

*Tice v. Novastar Fin., Inc.*,
   No. 04-0330-CV-2-OLD, 2004 WL 1895180 (W.D. Mo. Aug. 23, 2004) ......................5

*Wallace v. IntraLinks*,
   302 F.R.D. 310 (S.D.N.Y. 2014) ....................................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ......................................................................................................6

**Rules and Statutes**

Fed. R. Civ. P. 23 ...............................................................................................................passim

Section 10(b) of the Securities Exchange Act of 1934 ............................................................2, 7

Defendants Nu Skin Enterprises, Inc. ("Nu Skin"), M. Truman Hunt, and Ritch N. Wood (collectively, "Defendants") respectfully submit this supplemental submission in support of their Opposition to Plaintiffs' Motion for Class Certification ("Opp.").

## INTRODUCTION

Plaintiffs allege that Nu Skin failed to tell its investors that its Chinese subsidiary was violating Chinese multi-level marketing ("MLM") laws, and ask the Court to certify a class of those who acquired Nu Skin common stock between May 4, 2011 and January 17, 2014. Defendants submit that the class period should end on August 7, 2012, the day the Citron Report fully revealed the misrepresentations alleged in this action, or, alternatively, on January 15, 2014, the first trading date after the *People's Daily* articles were published.

Plaintiffs can only satisfy the predominance requirement of Rule 23(b)(3) by invoking the fraud-on-the-market presumption of reliance articulated in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). However, to successfully invoke that presumption, even at the class certification stage, Plaintiffs must *prove*, among other things, that the proposed class members purchased stock between the time the alleged misrepresentations were made and the time the truth of those misrepresentations was revealed (the "market timing" requirement). Where, as here, a curative disclosure is issued before the end of a proposed class period, putative class members purchasing subsequent to that disclosure cannot avail themselves of the benefit of the *Basic* presumption of reliance and thus cannot be included in the class. Courts have repeatedly considered precisely this issue at the class certification stage since *Basic* was adopted.

Plaintiffs claim that the Supreme Court's holdings in *Erica P. John Fund, Inc.* v. *Halliburton Co.*, 131 S. Ct. 2179 (2011) ("*Halliburton I*"), and *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 133 S. Ct. 1184 (2013), overrule these decades of decisions by precluding courts from considering, at class certification, whether a corrective disclosure

1

deprives subsequent purchasers of the *Basic* presumption.  However, the holdings in *Halliburton I* and *Amgen* are not nearly as broad as Plaintiffs claim.  Instead, they preclude only arguments related to the substantive Section 10(b) elements of loss causation and materiality that affect all class members equally, rather than Defendants' argument that the inapplicability of the *Basic* presumption of reliance for certain class members requires the shortening of a class period pursuant to Rule 23(b)(3).  Indeed, in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014) ("*Halliburton II*"), the Supreme Court explicitly held that plaintiffs bear the burden to prove market timing prior to class certification.  Thus, because *Halliburton I* and *Amgen* did not relieve the Court of its duty to evaluate corrective disclosures and determine an appropriate class period at the class certification stage, Defendants' challenge to the purported class period is ripe for adjudication at this time.

## ARGUMENT

### I.    Curative Disclosures Prevent Subsequent Purchasers From Invoking The *Basic* Presumption Of Reliance Because They Cannot Show The Requisite Market Timing

Reliance is an element of Plaintiffs' Section 10(b) claim.  Traditionally, to satisfy this element, a plaintiff was required to show direct reliance by proving "that he was aware of a company's statement and engaged in a relevant transaction . . . based on that specific misrepresentation."  *Halliburton I*, 131 S. Ct. at 2185.  In *Basic*, the Supreme Court adopted the fraud-on-the-market presumption, allowing securities fraud plaintiffs who satisfy certain prerequisites to avoid having to prove individualized reliance on alleged misrepresentations.  485 U.S. at 247.  The *Basic* presumption "allows investors to prove reliance on misrepresentations or omissions by presuming that the market price at which investors purchased was influenced by those misrepresentations and omissions."  *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*, 247 F.R.D. 32, 38 (D.D.C. 2008) ("*Fannie Mae*").  Plaintiffs who are entitled to

2

the *Basic* presumption thus satisfy the element of reliance "even if [they] do not directly rely on the misstatements." *Basic*, 485 U.S. at 241–42 (internal quotations omitted).

However, *Basic* may only be invoked if a plaintiff proves four prerequisites by a preponderance of the evidence: (1) the defendant made public misrepresentations; (2) those misrepresentations were material; (3) the shares were traded on an efficient market; and (4) the plaintiff purchased the shares after the misrepresentations but before the truth was publicly revealed.  *Halliburton II*, 134 S. Ct. at 2413 (citing *Basic*, 485 U.S. at 248 n.27).  The crux of the instant dispute is whether Plaintiffs have proven the fourth prerequisite—market timing.

Under *Basic*, a defendant may rebut the fraud-on-the-market presumption through "*[a]ny showing* that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." *Basic*, 485 U.S. at 248 (emphasis added).  Thus, the presumption may be rebutted by various showings, including a showing that news revealing the misrepresentations "credibly entered the market and dissipated the effects of the misstatements," such that those who traded after the corrective statements "would have no direct or indirect connection with the fraud." *Id.* at 248–49.  Accordingly, Defendants here ask the Court to follow *Basic* and determine whether the Citron Report is a curative disclosure that informed the market of Nu Skin's alleged misrepresentations, thus precluding subsequent purchasers from invoking the *Basic* presumption.

**II.     Prior To *Halliburton I* And *Amgen*, Courts Routinely Considered The Timing Of Corrective Disclosures To Shorten Class Periods Where Appropriate**

Even before *Basic*, courts considering motions for class certification recognized their duty to analyze corrective disclosures to determine the correct ending date of a class period.  *See, e.g.*, *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 143–44 (D.N.J. 1984) (shortening proposed class period due to intra-period announcement that alleged misrepresentations appeared

3

to be false); *In re LTV Sec. Litig.*, 88 F.R.D. 134, 147–48 (N.D. Tex. 1980) (same).  Indeed, in *Basic* itself, the Supreme Court noted that the district court, in ruling on a class certification motion, had shortened the class period based on a corrective disclosure.  485 U.S. at 227–29 & 228 n.5 (where defendant allegedly falsely denied merger negotiations, court ended class period at announcement that defendant had been approached concerning merger, rather than at later announcement of approved tender offer).

Following *Basic*, courts continued to consider such market timing issues ***at the class certification stage*** and continued to shorten proposed class periods where the alleged misrepresentations or omissions were sufficiently corrected.  *See, e.g.*, *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 351 n.11 (3d Cir. 2009) (ending class period nearly 10 months earlier than proposed by plaintiffs because of earlier corrective disclosure); *In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*, 251 F.R.D. 656, 666–67 (D. Utah 2008) (shortening class period once it became "clear that those [mis]statements should no longer be relied upon," despite plaintiffs' argument that later statements disclosed additional adverse information); *Fannie Mae*, 247 F.R.D. at 37–41 (ending class period after investors informed of substantial financial irregularities, even if full extent of irregularities not disclosed); *In re Micron Tech., Inc. Sec. Litig.*, 247 F.R.D. 627, 635–36 (D. Idaho 2007) (shortening proposed class period by five months based on intra-period curative disclosure); *In re Amer. Italian Pasta Co. Sec. Litig.*, No. 05-0725-CV-W-ODS, 2007 WL 927745, at *4 (W.D. Mo. Mar. 26, 2007) (shortening class period to date of earlier curative disclosure where later disclosure "reiterated and reinforced" earlier disclosure but "did not provide any new information to the market or investors," despite price drop after later disclosure); *LaGrasta v. First Union Sec., Inc.*, No. 2:01-CV-251-FTM29DNF, 2005 WL 1875469, at *1, *13 (M.D. Fla. Aug. 8, 2005) (ending class period when

*SmartMoney* magazine "disclosed the alleged fraud [of an analyst] to investors," and refusing to extend class to date analyst was fired, finding subsequent investors "cannot be class members because there can be no predominance"); *Tice v. Novastar Fin., Inc.*, No. 04-0330-CV-2-OLD, 2004 WL 1895180, at *2–3 (W.D. Mo. Aug. 23, 2004) (in resolving conflict about "closing date of the class period" for purposes of lead plaintiffs determination, court ended class period based on earlier of proposed corrective disclosures—article in *The Wall Street Journal* that cured the market by putting investors on notice of alleged fraud); *In re Ribozyme Pharm., Inc. Sec. Litig.*, 205 F.R.D. 572, 579–81 (D. Colo. 2001) (shortening class period to end after initial curative disclosures); *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 103–04 (M.D.N.C. 1993) (shortening class period because media disseminated curative information prior to proposed end of class period); *Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247, 253–55 (D.N.J. 1992) (cutting off class period when news reports first revealed defendant's tenuous financial condition); *In re Kulicke & Soffa Indus., Inc. Sec. Litig.*, No. 86-1656, 1990 WL 1478, at *5–7 (E.D. Pa. Jan. 9, 1990) (curative press release that withdrew earlier financial projections ended class period despite plaintiffs' request to extend class period until quarterly results were filed).

### III. In *Wal-Mart* and *Comcast*, The Supreme Court Clarified That District Courts *Must* Answer All Relevant Questions In Connection With Class Certification

Until recently, courts often erred on the side of certifying longer class periods or delayed determination of contested issues until a later stage of the litigation when there was a disputed question of fact about whether a particular disclosure was curative, relying on the Supreme Court's holding in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). Many courts held that *Eisen* prohibited such merits inquiries at the class certification stage of a litigation. *See, e.g.*, *Data Access*, 103 F.R.D. at 143 ("A court may not consider the merits of the plaintiffs' case in determining the certification motion," citing *Eisen*.).

5

In 2011, the Supreme Court rejected this interpretation of *Eisen* in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 n.6 (2011). *Wal-Mart* emphasized that the "rigorous analysis" a court must undertake to determine whether Rule 23 prerequisites had been satisfied may require a court to "probe behind the pleadings" and would "frequently . . . entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 2551. Two years later, in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013), the Supreme Court reaffirmed this standard. Thus, following *Wal-Mart* and *Comcast*, a court considering the curative effect of a disclosure at the class certification stage must determine whether Plaintiffs have met their burden of proof rather than defer ruling under the "substantial question of fact" standard. *See In re BP P.L.C. Sec. Litig.,* MDL No. 10-md-2185, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013) ("*Comcast* signals a significant shift in the scrutiny required for class certification.").

Accordingly, unless *Halliburton I* or *Amgen* precludes such an inquiry (and, as discussed below, they do not), this Court *must* consider and resolve merits-related questions to the extent that such a resolution is necessary to determine whether the prerequisites of Rule 23 have been satisfied. Opp. at 11. Here, such questions include whether the Citron Report (or, in the alternative, the *People's Daily* articles) cured the market and thus should end the class period.[1]

---

[1] In deciding whether a disclosure is curative, courts often compare the relevant disclosures and the alleged misrepresentations that form a basis of plaintiffs' claims to determine whether, in the court's reasoned judgment, the disclosures alerted the market to the alleged misrepresentations. Such courts often hold that subsequent disclosures that merely repeat the initial corrective information are insufficient to extend the class period. *See, e.g.*, *Pharmacia*, 554 F.3d at 351 n.11 (limiting class period where later disclosure was "different in only degree, and not in kind"); *Amer. Italian Pasta*, 2007 WL 927745, at *4 (refusing to extend class period where second disclosure contained no new information). Here, Plaintiffs' alleged corrective disclosures do not require extensive inquiry or further evidentiary hearings because the text of the Citron Report and the *People's Daily* articles is unambiguous and can readily be compared, both to each other and to Plaintiffs' claimed misrepresentations. *See* Opp. at 22–24.

6

## IV. Neither *Halliburton I* Nor *Amgen* Prohibits A Challenge To Rule 23(b)(3) Predominance Following The Citron Report's Publication

In *Halliburton I*, the Supreme Court held that a court may not consider whether plaintiffs have proven the substantive Section 10(b) element of loss causation at the class certification stage. 131 S. Ct. at 2183, 2186. In *Amgen*, the Court further precluded consideration of the materiality of an alleged misrepresentation during class certification. 133 S. Ct. at 1191. Contrary to Plaintiffs' suggestion, however, neither *Halliburton I* nor *Amgen* precludes Defendants' actual argument—that a curative disclosure made during the proposed class period deprives subsequent purchasers of the fraud-on-the-market presumption and thus common issues of fact do not predominate for such purchasers under Rule 23(b)(3).

### A. *Halliburton I* Prohibits Only Loss Causation Arguments at Class Certification; Defendants Do Not Challenge Loss Causation

*Halliburton I* precludes consideration during class certification of whether Plaintiffs have proved loss causation (*i.e.,* "that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss"). 131 S. Ct. at 2186. Thus, a defendant may not defeat class certification by arguing that a stock price drop was caused by something other than a purported corrective disclosure. *See id.* at 2185–86; *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 687–88 (5th Cir. 2015); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, No. 12–5275, 2015 WL 5097883, at *11 (D.N.J. Aug. 31, 2015); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. CV–10–J–2847–S, 2014 WL 6661918, at *5 (N.D. Ala. Nov. 19, 2014); *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 182 (S.D.N.Y. 2012). Notably, this prohibited argument (*e.g.*, that a stock price drop is unrelated to the disclosure of misrepresentations) would apply equally to all putative class members and thus would not implicate the Rule 23(b)(3) predominance requirement.

Here, by contrast, Defendants' challenge is not based on loss causation at all and does not

7

have class-wide impact.  *Halliburton I,* 131 S. Ct. at 2186 ("Loss causation addresses a matter different from whether an investor relied on a misrepresentation . . . .").  Defendants do not ask the Court to determine what caused investor loss, but instead challenge only whether ***certain members of the proposed class*** satisfy the market timing requirement for the *Basic* presumption.

Plaintiffs claim that Defendants are making a loss causation argument because Defendants ask the Court to determine whether certain disclosures were corrective, and, according to Plaintiffs, such an inquiry necessarily relates to loss causation.  *See* Reply at 4–6.  Defendants readily acknowledge that a determination of whether a disclosure is corrective *can* relate to the element of loss causation.  *See In re Williams Sec. Litig.—WCG Subclass*, 558 F.3d 1130, 1137 (10th Cir. 2009) (corrective disclosures are the easiest way to prove loss causation).  However, this fact does not render corrective disclosures irrelevant for other purposes.  Indeed, corrective disclosures are almost always used to delineate the end of a class period.

Simply put, a discussion of corrective disclosures need not be a discussion of loss causation.  As such, *Halliburton I* does not preclude defendants from challenging the end date of a proposed class period just because such a challenge involves the concept of corrective disclosures.  Indeed, if this argument were correct, plaintiffs could seek to certify a class that lasted for months (or even years) after the last corrective disclosure, and the Court could not end the class period before plaintiffs' proposed date.  Such a result is absurd.  The class certification process is designed for courts to determine the appropriate bounds of the class, which necessarily includes the length of the class period.  The Supreme Court in *Halliburton I* did not relieve district courts of this important duty.[2]

---

[2] To the contrary, the *Halliburton I* Court reiterated the holding in *Basic* that a plaintiff must prove market timing at the class certification stage.  131 S. Ct. at 2185.

### B.     *Amgen* Prohibits Only Challenges to the Materiality of an Alleged Misrepresentation; Defendants Make No Such Challenge

Two years after *Halliburton I*, the Supreme Court held that plaintiffs seeking class certification need not prove the materiality of alleged misrepresentations, notwithstanding the fact that materiality of misrepresentations is one of the four prerequisites to invoke the *Basic* presumption. *Amgen*, 133 S. Ct. at 1197. The Court relied on the fact that materiality was "a question common to all members of the class" and thus "a failure of proof on the issue of materiality would end the case" for every class member, whose claims would "prevail or fail in unison." *Id.* at 1191. Accordingly, the Court found that a lack of materiality did not implicate the Rule 23(b)(3) predominance requirement and thus was an inappropriate inquiry at the class certification stage. *Id.* at 1191, 1197.

Cases since *Amgen* have clarified what qualifies as an impermissible materiality argument. In each case Plaintiffs cite, materiality arguments that ran afoul of *Amgen* had applied with equal force to all class members. Thus, courts have found impermissible the defense that the truth was on the market *before any alleged misrepresentation was made*, rendering any alleged misrepresentation immaterial as a matter of law. *See, e.g.*, *Regions Fin. Corp.*, 2014 WL 6661918, at *9; *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 671 (S.D. Fla. 2014). One court has also held that *Amgen* prevents defendants from claiming, at class certification, that the absence of a stock price reaction to prior disclosures renders an allegedly similar purported corrective disclosure immaterial. *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 Civ. 3461(PAC), 2015 WL 5613150, at *6 (S.D.N.Y. Sept. 24, 2015).[3]

---

[3] *Ludlow*, cited by Plaintiffs, *see* Reply at 5, contains language suggesting that *Amgen* precludes a court from determining whether an alleged corrective disclosure relates to an alleged misrepresentation at the class certification stage. 800 F.3d at 688. Not only is this holding unrelated to Defendants' argument that the Citron Report was a curative disclosure, but it also is limited to its specific facts and the context in which it arose. *Ludlow* affirmed the lower court's

9

*Amgen* does not prohibit Defendants' argument for two principal reasons. First, Defendants do not challenge the materiality of any alleged misrepresentation, but instead argue that the Citron Report (or, in the alternative, the *People's Daily* articles) were curative disclosures that precluded subsequent purchasers from relying on the fraud-on-the-market presumption. Second, Defendants' argument does *not* apply equally to all purported class members. To the contrary, Defendants argue that those class members who purchased Nu Skin stock prior to the publication of the Citron Report *are* entitled to rely on the fraud-on-the-market presumption, whereas those who purchased after the report was published are not.

Plaintiffs claim that Defendants' argument is precluded by *Amgen* as a truth-on-the-market defense and cite cases holding such a defense inappropriate at class certification. Reply at 7. However, a truth-on-the-market defense is a method of "showing that the price was not affected by the misstatement or omission" by "showing that the falsity of the misrepresentation was already known to market makers, and, as such, the misrepresentation could not have been material." *GAMCO Investors, Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 254 (S.D.N.Y. 2013); *see also Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000) ("Under [the fraud-on-the market] corollary, a misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market."). As these cases, and

---

decision that plaintiffs had come forward with an expert damages analysis at class certification that demonstrated that damages (not reliance) were capable of class-wide determination. *Id.* at 686. Defendants claimed the model was unreliable because it relied on a disclosure that was unrelated to the alleged misstatements. *Id.* The court found that the question of whether a particular disclosure was related to an identified misrepresentation (and the related question of whether the damages model was reliable) was "susceptible to a class-wide answer" and thus was an inappropriate inquiry at the class certification stage pursuant to *Amgen*. *Id.* at 688. Here, by contrast, a finding that the Citron Report (or the *People's Daily* articles) were curative disclosures does not relate to the question of whether a common method of calculating damages exists. Instead, it relates solely to the question of whether some purported class members cannot rely on the *Basic* presumption and thus must prove their own individual reliance.

10

indeed, all of the truth-on-the-market cases cited by Plaintiffs hold, the truth-on-the-market defense seeks to render alleged misrepresentations immaterial by demonstrating that the market was aware of the supposedly misstated or omitted facts prior to utterance of the allegedly actionable statements, thus requiring dismissal of the entire case. Because such arguments affect the class as a whole equally, they are irrelevant to a Rule 23(b)(3) predominance inquiry and thus prohibited. *See GAMCO Investors, Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 99–100 (S.D.N.Y. 2013) ("These arguments—*i.e.*, truth on the market and market inefficiency—are susceptible to proof on a class-wide basis."). Because Defendants here do not allege that curative information was in the market prior to all alleged misrepresentations, and thus Defendants' argument does not affect all class members equally, Plaintiffs' truth-on-the-market cases are inapposite.[4]

### C. *Amgen* Addresses the Court's Concern About the Viability of Any Claims Not Based on *Basic's* Fraud-on-the-Market Presumption

At oral argument, the Court asked whether any Nu Skin shareholder who could not rely on the fraud-on-the-market presumption could nevertheless maintain his or her claims. *Amgen* addressed this point. While *Amgen* held that a finding that an alleged misrepresentation lacked *materiality* would eliminate all claims (and thus was impermissible at the class certification stage), a ruling that certain shareholders could not avail themselves of the fraud-on-the-market presumption would still permit those shareholders to try to prove reliance through "traditional" means. 133 S. Ct. at 1199. Thus, while "individual reliance issues would predominate in such a

---

[4] Other plaintiffs have also tried to stretch *Amgen* to apply to elements other than materiality. For example, in *In re BP*, defendants argued that plaintiffs could not invoke the *Basic* reliance presumption and thus could not show predominance of common issues because they could not establish the publicity of the alleged misrepresentations, as required by *Basic*. 2013 WL 6388408, at *14. In response, plaintiffs argued that defendants' arguments about the publicity of BP's MMS filings were actually impermissible arguments about materiality. *Id.* at *15. The *BP* court rejected plaintiffs' attempt to characterize the issue as a precluded materiality argument and denied class treatment based on a failure to prove *Basic*'s publicity requirement. *Id.*

11

lawsuit . . . plaintiff's claim would remain live, it would not be 'dead on arrival.'" *Id.*[5]

As a practical matter, there are many potential variations on how an individual plaintiff might directly show actual reliance should the Court determine that the Citron Report was a fully corrective disclosure.  Such individual reliance, and its reasonableness in light of the Citron Report, is a highly fact-specific inquiry that is not appropriate for determination at this time.[6] Defendants respectfully submit that the only appropriate inquiry now is whether Plaintiffs have met their burden of proving all of the requisite elements of Rule 23(a) and 23(b)(3) for the proposed class period.  Because neither *Halliburton I* nor *Amgen* precludes the Court from inquiring into whether the *Basic* presumption applies throughout the class period, and because the facts demonstrate that the presumption is inapplicable following the publication of the Citron Report, the Court should terminate the class period on August 7, 2012.

## V.    Recent Cases, Including *Halliburton II*, Confirm This Court's Duty To Consider Whether The Citron Report Is A Curative Disclosure That Ends The Class Period

### A.    *Halliburton II* Confirmed That Plaintiffs Must Prove Market Timing for Class Certification

In *Halliburton II*, the Supreme Court emphasized that the same rigorous class certification standards articulated in *Wal-Mart* and *Comcast* apply to establishing Rule 23(b)(3) predominance when plaintiffs seek to invoke the *Basic* presumption:

> [The *Wal-Mart* and *Comcast*] decisions have made clear that plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3) . . . . The *Basic* presumption does not

---

[5] Pre-*Amgen* precedent is in accord.  *See, e.g.*, *LaGrasta*, 2005 WL 1875469, at *13 (purchasers after curative disclosure "must establish their individual reliance on the misrepresentations").

[6] A plaintiff may be able to prove, for example, that he (i) did not find the 2012 Citron Report to be credible, (ii) obtained other information causing him to disregard the Citron Report, or (iii) conducted sufficient other diligence on Nu Skin so that his reliance on Nu Skin's statements was reasonable even absent any awareness of the Citron Report.

> relieve plaintiffs of the burden of proving—before class certification—that this [predominance] requirement is met. *Basic* instead establishes that a plaintiff satisfies that burden by proving the prerequisites for invoking the presumption— namely, publicity, materiality, market efficiency, ***and market timing***. The burden of proving those prerequisites still rests with plaintiffs and (with the exception of materiality) ***must be satisfied before class certification***.

*Halliburton II,* 134 S. Ct. at 2412 (emphasis added).[7] Thus, after *Halliburton II*, plaintiffs cannot use the *Basic* presumption to avoid judicial scrutiny at class certification. Rather, "the element of reliance ***must*** be considered at class certification." *City of Sterling Heights*, 2015 WL 5097883, at *5 (citing *Halliburton II*, 134 S. Ct. at 2407–08) (emphasis added).

Plaintiffs here recognize their obligation under *Basic* to prove market efficiency and publicity before class certification, but seek to avoid their additional obligation to prove market timing (*i.e.*, that all proposed class members purchased between the time of the alleged misrepresentations and the time the truth was revealed). Just as the Court would end the class period for lack of predominance if the market were no longer efficient, so too should it end the class period following a curative disclosure. The reason for both actions is identical—Plaintiffs' inability after that point to invoke the *Basic* presumption of reliance.

### B. Since *Halliburton I* and *Amgen*, District Courts Continue to Require That Plaintiffs Prove Market Timing at Class Certification

Since *Halliburton I* was decided in 2011, only a few district courts have had occasion to consider arguments that a class period should be shortened due to an intra-period curative

---

[7] *Halliburton II*'s discussion of market timing as an element of predominance contradicts Plaintiffs' suggestion at oral argument that market timing is a Rule 23(a) typicality and adequacy question, rather than a Rule 23(b) predominance question. As *Amgen*'s dissent acknowledged, "[i]t would be incorrect to suggest that timing *solely* relates to Rules 23(a)(3) and (4)" because "[i]t is equally important to establish the timing range at certification for Rule 23(b)(3) reliance purposes." 133 S. Ct. at 1209 n.6; *see also Goldman Sachs*, 2015 WL 5613150, at *3 (market timing part of predominance inquiry); *Better v. YRC Worldwide Inc.*, Civ. Act. No. 11–2072– KHV, 2013 WL 6060952, at *3–4 (D. Kan. Nov. 18, 2013) (same); *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 292 F.R.D. 515, 528 (N.D. Ohio 2013) (same).

disclosure. Plaintiffs cite no decision in which a court has found such arguments to be precluded by *Halliburton I* or *Amgen*. Moreover, in *George v. China Auto. Sys., Inc.*, No. 11 CIV 7533 (KBF), 2014 WL 173417 (S.D.N.Y. Jan. 15, 2014), in the context of a challenge to market efficiency, the court rejected an argument that requiring plaintiffs to show a class-wide means of proving reliance at class certification was precluded by *Amgen*, holding that requiring plaintiffs to show reliance was not "equivalent to requiring that plaintiffs show 'materiality' as to a misstatement at the class certification stage," and explaining that although materiality is a common question for the entire class, "whether individual stockholders, among the thousands or millions of different stockholders, can share proof of reliance is a separate question [and that a]n answer in the negative suggests a lack of predominance on this issue." *Id.* at *3.

Additionally, several post-*Halliburton I* class certification decisions considered arguments similar to those raised here by Defendants on the merits, rather than finding them prohibited by *Halliburton I* or *Amgen.* In *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38 (S.D.N.Y. 2012), the court considered the defendants' argument that the class should end one year earlier than proposed because of a corrective disclosure made during the class period. *Id*. at 53. Rather than deeming such an argument to be precluded, the court reasoned that, "[i]n a securities class action, the class period should end when the market is 'cured'—that is, 'when the full truth has been disclosed to the market and the natural market forces have had a reasonable period of time to receive, digest and reflect the bad news in the market price of the security.'" *Id.* Although the court ultimately rejected defendants' request to truncate the class period, it based its decision on the specific facts of that case (*i.e.*, that later disclosures provided additional corrective information), not on any suggestion that the argument was prohibited under *Halliburton I. Id.*; *see also Maiman v. Talbott*, No. SACV 09-00012 AG (ANx), 2011 U.S. Dist. LEXIS 98243, at

14

\*20–24 (C.D. Cal. Aug. 29, 2011) (considering whether disclosure sufficiently curative to end class period, without finding argument precluded by *Halliburton I*); *Lumen v. Anderson*, 280 F.R.D. 451, 456 (W.D. Mo. 2012) (shortening class period and rejecting argument that period should have started sooner based on alleged misrepresentations that court found non-actionable).

Finally, in *Wallace v. IntraLinks*, 302 F.R.D. 310 (S.D.N.Y. 2014), the court considered defendants' argument that the "[c]lass period should exclude those who purchased IntraLinks stock after May 11, 2011 because on that date, the market became aware that FDIC was decreasing its IntraLinks usage," meaning that "any purchasers after that date did not rely on the alleged misrepresentations, and common issues do not predominate as to those purchasers." *Id*. at 318. While the court did not shorten the class period, its ruling was again based on the specific facts of that case.[8] *Wallace* did not find *Halliburton I* or *Amgen* to preclude the argument.

## CONCLUSION

Defendants respectfully submit that the Court should terminate the class period on August 7, 2012, or in the alternative, on January 15, 2014.

Dated this 21st day of December, 2015.

**PARR BROWN GEE & LOVELESS**

/s/ Robert S. Clark
Robert S. Clark
Daniel E. Barnett

**SIMPSON THACHER & BARTLETT LLP**

James G. Kreissman (*pro hac vice*)
Alexis Coll-Very (*pro hac vice*)

*Attorneys for Defendants*

---

[8] Plaintiffs' suggestion that *Wallace* found defendants' argument to be a mere damages inquiry is incorrect. *Wallace* only discussed damages *after* it found the first disclosure was not fully curative. Had it ruled otherwise, it need not have discussed damages at all.

15