Jonathan Gardner (*pro hac vice*)
Christine M. Fox (*pro hac vice*)
Guillaume Buell (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jgardner@labaton.com
cfox@labaton.com
gbuell@labaton.com

Eric K. Jenkins (10783)
**CHRISTENSEN & JENSEN, P.C**.
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472

*Counsel for Lead Plaintiff State-Boston Retirement System
and the Proposed Class*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE NU SKIN ENTERPRISES, INC., SECURITIES LITIGATION | Master File No. 2:14-cv-00033-JNP-BCW<br><br>Hon. Jill Parrish |
| This Document Related To:<br>ALL ACTIONS | **LEAD PLAINTIFF'S UNOPPOSED MOTION PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, APPROVING FORM AND MANNER OF NOTICE, AND SETTING DATE FOR HEARING ON FINAL APPROVAL OF SETTLEMENT AND SUPPORTING MEMORANDUM** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... iii

STATEMENT OF RELIEF SOUGHT AND GROUNDS FOR MOTION ................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

    A.    Description of the Action............................................................................... 2

    B.    Settlement Negotiations ................................................................................ 4

ARGUMENT .............................................................................................................................. 5

I.      THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................. 5

    A.    The Standard for Preliminary Approval ...................................................... 5

    B.    The Settlement Was Fairly and Honestly Negotiated................................... 6

    C.    The Outcome of the Litigation Is Uncertain ............................................... 7

    D.    The Value of a Guaranteed Recovery Outweighs the Possibility of Relief
           after Protracted and Expensive Litigation............................................... 10

    E.    The Judgment of the Parties that the Proposed Settlement Is Fair,
           Adequate, and Reasonable ...................................................................... 11

II.     THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED............. 12

    A.    The Proposed Settlement Class Meets the Requirements of Rule 23(a) ............. 12

          1.    The Settlement Class Is Sufficiently Numerous ....................................... 12

          2.    There Are Common Questions of Law and Fact ....................................... 13

          3.    The Proposed Class Representative's Claims Are Typical....................... 13

          4.    Plaintiffs Will Fairly and Adequately Protect the Settlement Class ......... 14

    B.    The Proposed Settlement Class Satisfies Rule 23(b)(3) ...................................... 15

          1.    Common Questions of Law or Fact Predominate..................................... 15

          2.    A Class Action Is Superior Method of Adjudication................................ 17

III.    THE PROPOSED NOTICE PLAN AND FORMS SHOULD BE APPROVED............. 17

IV.    PROPOSED PLAN OF ALLOCATION........................................................................ 19

V.    PROPOSED SCHEDULE OF EVENTS.......................................................................... 20

VI.    CONCLUSION............................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adamson v. Bowen*,
    855 F.2d 668 (10th Cir. 1988) ...........................................................................13

*Affiliated Ute Citizens of Utah v. United States*
    406 U.S. 128 (1972)...........................................................................................16

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................12, 15, 17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013)..................................................................................15, 16

*Ashley v. Reg'l Transp. Dist.*,
    Civil No. 05-cv-01567-WYD-BNB, 2008 U.S. Dist. LEXIS 13069 (D. Colo.
    Feb. 11, 2008) ...............................................................................................6, 12

*Basic v. Levinson*,
    485 U.S. 224 (1988)...........................................................................................16

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
    No. 07-Civ-10453, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ...............................14

*Bennett v. Sprint Nextel Corp.*,
    298 F.R.D. 498 (D. Kan. 2014).....................................................................13, 15

*CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*,
    No. 12-CV-08087 (CM)(SN), 2013 WL 2661037 (S.D.N.Y. June 12, 2013)..........................9

*In re Crocs, Inc. Sec. Litig.*,
    No. 07-cv-02351-PAB-KLM, 2013 WL 4547404 (D. Colo. Aug. 28, 2013) .........8, 14, 17, 18

*De-Julius v. New England Health Care Emps. Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) ......................................................................17, 18

*In re Delphi Corp. Sec. Derivative & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ........................................................................7

*Ditty v. Check Rite, Ltd.*,
    182 F.R.D. 639 (D. Utah 1998) ......................................................................13

*Gottlieb v. Wiles*,
    11 F.3d 1004 (10th Cir. 1993) .......................................................................10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014)...................................................................................16

*In re Integra Realty Res. Inc.*,
    354 F.3d 1246 (10th Cir. 2004) .....................................................................18

*In re Intelcom Grp. Inc. Sec. Litig.*,
    169 F.R.D. 142 (D. Colo. 1996) ...................................................................17

*Jones v. Nuclear Pharmacy, Inc.*,
    741 F.2d 322 (10th Cir. 1984) .........................................................................6

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) .............................................................5, 6, 8

*McPhail v. First Command Fin. Planning, Inc.*,
    No. 05cv179-IEG- JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) .................................11

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)....................................11

*Miller v. Basic Research, LLC*,
    285 F.R.D. 647 (D. Utah 2010) .......................................................12, 13, 16

*In re Motor Fuel Temperature Sales Practices Litig.*,
    286 F.R.D 488 (D. Kan. 2012).........................................................................5

*Nakkahumpun v. Taylor*,
    No. 12-cv-01038-CMA, 2015 WL 6689399 (D. Colo. Nov. 3, 2015) ......................................5

*In re Nature's Sunshine Prods. Inc. Sec. Litig*,
    251 F.R.D. 656, 661 (D. Utah 2008) .............................................................16

*Nieberding v. Barrette Outdoor Living, Inc.*,
    No. 12-CV-2353-DDC-TJJ, 2015 WL 1645798 (D. Kan. Apr. 14, 2015) ...............................6

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .........................................................11

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
    625 F. Supp. 2d 1133 (D. Colo. 2009)................................................................8

*Redwen v. Sino Clean Energy, Inc*.,
    No. CV 11-3936 PA, 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013) ....................19

*Rutter & Wilbanks Corp. v. Shell Oil Co*.,
    314 F.3d 1180 (10th Cir. 2002) ....................................................................5, 6, 14

*In re Sprint Corp. ERISA Litig.*,
    443 F. Supp. 2d 1249 (D. Kan. 2006)..............................................................7

*In re Urethane Antitrust Litig.*,
    251 F.R.D. 629 (D. Kan. 2008)......................................................................13

*Yang v. Focus Media Holding, Ltd.*,
    No. 11 Civ. 9051 (CM), 2014 U.S. Dist. LEXIS 126738 (S.D.N.Y. Sept. 4,
    2014) ..............................................................................................................9

*Yung v. Integrated Transp. Network Grp., Inc.*,
    No. 00 Civ. 3965 (DAB)(HBP), 2001 U.S. Dist. LEXIS 24715 (S.D.N.Y.
    Sept. 4, 2001) ................................................................................................9

**Statutes**

15 U.S.C. §78u-4(a)(7)(A)-(F)......................................................................18

**Rules**

Fed. R. Civ. P. 23 ........................................................................................17, 18

Fed. R. Civ. P. 23(a) ....................................................................................12

Fed. R. Civ. P. 23(a)(1)................................................................................12

Fed. R. Civ. P. 23(a)(2)................................................................................13

Fed. R. Civ. P.  23(b)(3)...............................................................................15, 17

Fed. R. Civ. P.  23(c)(2)................................................................................17

Fed. R. Civ. P. 23(g) ....................................................................................15

Fed. R. Civ. P. 23(g)(1)(A)...........................................................................15

**Other Authority**

Newberg on Class Actions  (5th ed. 2015) .......................................................................5

**STATEMENT OF RELIEF SOUGHT AND GROUNDS FOR MOTION**

Lead Plaintiff State-Boston Retirement System ("State-Boston" or "Lead Plaintiff"), on behalf of itself, named plaintiffs Michael J. Dudash ("Dudash") and Jason Spring ("Spring") (collectively, "Plaintiffs"), and the Settlement Class, on the one hand, and Nu Skin Enterprises, Inc. ("Nu Skin" or the "Company"), M. Truman Hunt, and Ritch N. Wood (collectively, the "Individual Defendants" and, with Nu Skin, the "Defendants"), on the other hand, have reached a proposed settlement of this securities class action for a total of $47,000,000 in cash that, if approved, will resolve all claims in the Action against Defendants.[1]

Lead Plaintiff respectfully moves this Court for entry of the proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Settling Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order") that will (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) certify the Settlement Class for settlement purposes only; (iii) appoint Plaintiffs as Class Representatives and Labaton Sucharow LLP ("Labaton Sucharow" or "Lead Counsel) as Class Counsel; (iv) approve the form and manner of giving notice of the Settlement to the Settlement Class; and (v) set a date for the Settlement Hearing at which time the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses, including reimbursement of expenses and lost wages to Lead Plaintiff. Defendants do not oppose the relief requested by this motion.

---

[1]   All capitalized terms that are not otherwise defined herein shall have the same meaning as those provided in the Stipulation and Agreement of Settlement, dated as of May 2, 2016 (the "Stipulation"), filed concurrently herewith as Exhibit 1 to the Declaration of Jonathan Gardner in Support of Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Gardner Declaration" or "Gardner Decl.").

## FACTUAL AND PROCEDURAL BACKGROUND

**A.      Description of the Action**

Beginning in March of 2014, four class actions were filed in the U.S. District Court for the District of Utah (the "Court") on behalf of investors in Nu Skin.  These cases were consolidated on May 1, 2014 into the present action as *In re Nu Skin Enterprises, Inc. Securities Litigation,* Master File No. 2:14-cv-00033-JNP (D. Utah) (the "Action") when the Court issued an Order appointing State-Boston as Lead Plaintiff and appointing Labaton Sucharow as Lead Counsel.  ECF No. 42.

The operative complaint in the Action is the Consolidated Class Action Complaint filed on June 30, 2014 (the "Complaint," ECF No. 51).  The Complaint generally alleges violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") by the Defendants and violations of Section 20(a) of the Exchange Act by the Individual Defendants.  Before filing the Complaint, Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims and transactions that are the subject of the Action.  This included reviewing and analyzing: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and laws and regulations in the People's Republic of China ("PRC" or "Mainland China"); (iii) research reports issued by financial analysts concerning the Company; and (iv) other public statements issued by or concerning the Company and the Defendants.  Lead Counsel also interviewed approximately 30 individuals purporting to be former employees, independent distributors, or sales promoters of Nu Skin and other persons who claimed to have knowledge of the matters alleged.  Additionally, Lead Counsel consulted with experts on issues related to loss

causation and damages, multi-level marketing ("MLM"), and direct selling and MLM in Mainland China.

On August 29, 2014, Defendants filed a motion to dismiss the Complaint (ECF No. 53), which Lead Plaintiff opposed on October 28, 2014 (ECF No. 59). On February 19, 2015, after hearing oral argument on Defendants' motion to dismiss, the Court denied the motion and issued an Order on February 26, 2015. ECF No. 72.

Thereafter, the Parties engaged in comprehensive fact discovery. Plaintiffs' counsel reviewed and analyzed: (i) approximately 500,000 pages of documents produced by Defendants; and (ii) approximately 26,000 pages of documents produced in response to 15 third-party subpoenas. Lead Plaintiff took seven 30(b)(6) depositions of Nu Skin representatives and deposed Defendants' expert on class certification issues.

Plaintiffs moved for class certification on June 26, 2015. ECF Nos. 90-92, 94-96. Defendants filed their opposition to Plaintiffs' class certification motion on August 25, 2015 (ECF Nos. 99-101), and Plaintiffs filed their reply brief on class certification on October 26, 2015. ECF Nos. 107-108. The Court heard oral argument on the motion for class certification on December 9, 2015 (ECF No. 119) and requested supplemental briefing on certain issues (*Id.*) which the parties filed promptly thereafter. ECF Nos. 123-124. In connection with class certification, Plaintiffs produced documents to Defendants and Lead Plaintiff sat for one deposition. Plaintiffs' motion for class certification was *sub judice* when the Settlement was reached.

**B.      Settlement Negotiations**

In the fall of 2015, the Parties engaged Bruce Freedman of JAMS for a full day mediation.  Settlement was not reached at that time, however, the Parties agreed to explore mediation again after further litigation of the case.  Thereafter, the Parties engaged the Honorable Layn R. Phillips ("Judge Phillips"), a former federal judge and experienced mediator, to assist them in further exploring a potential resolution of the claims in the Action.  On February 8, 2016, the Parties, including representatives from State-Boston and Nu Skin's insurance carriers, met with Judge Phillips in an attempt to reach a settlement.  A settlement was not reached on February 8, 2016.  However, following the mediation, Judge Phillips continued his efforts.  Following further arm's-length and mediated negotiations under the auspices of Judge Phillips, Defendants and Lead Plaintiff reached an agreement in principle to settle the Action and executed a Settlement Term Sheet on February 22, 2016.

Lead Plaintiff believes that the claims asserted in the Action have merit and that the evidence developed to date supports the claims asserted.  However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action through trial and appeals.  Lead Plaintiff and Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex matters such as the Action, as well as the difficulties and delays inherent in such litigation.  Lead Counsel also is mindful of the inherent problems of proof and the possible defenses to the claims alleged in the Action.  Based on their evaluation, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in the Stipulation confers substantial monetary benefits upon the Settlement Class and is in the best interests of Plaintiffs and the Settlement Class.

4

## ARGUMENT

I.   **THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

    A.   **The Standard for Preliminary Approval**

        Approval of a proposed settlement is within the sound discretion of the Court. *See Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1187 (10th Cir. 2002). District court review of a class action settlement proposal is a two-step process. Newberg on Class Actions §13:12 (5th ed. 2015). The first step is a preliminary, pre-notification hearing to determine whether "notice of the proposed settlement should be sent to the class." *Id*. at §13:13; *Nakkahumpun v. Taylor*, No. 12-cv-01038-CMA, 2015 WL 6689399, at *3 (D. Colo. Nov. 3, 2015). "If the Court grants preliminary approval, it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class action settlement." *In re Motor Fuel Temperature Sales Practices Litig*., 286 F.R.D 488, 492 (D. Kan. 2012). At the preliminary approval stage, the question is "whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006).

        "The Court will ordinarily grant preliminary approval where the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *In re Motor Fuel*, 286 F.R.D. at 492 (internal quotation omitted). "While the Court will consider the Tenth Circuit's factors in depth at the final approval hearing, they are a useful guide at the preliminary approval

stage as well." *Nieberding v. Barrette Outdoor Living, Inc.*, No. 12-CV-2353-DDC-TJJ, 2015

WL 1645798, at *4 (D. Kan. Apr. 14, 2015).[2]  The Tenth Circuit's factors include:

> (1) whether the proposed settlement was fairly and honestly negotiated;

> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

> (3) whether the value of an immediate recovery out-weighs the mere possibility of future relief after protracted and expensive litigation; and

> (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter,* 314 F.3d at 1188; *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984).

Because there is no reason to doubt that the Settlement satisfies each of the foregoing

prerequisites, the Court should preliminarily approve the Settlement.

## B.    The Settlement Was Fairly and Honestly Negotiated

There is no doubt the Settlement was fairly and honestly negotiated.  "The fairness of the

negotiating process is to be examined 'in light of the experience of counsel, the vigor with which

the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations

themselves.'"  *Ashley v. Reg'l Transp. Dist., Civil* No. 05-cv-01567-WYD-BNB, 2008 U.S. Dist.

LEXIS 13069, at *15-16 (D. Colo. Feb. 11, 2008) (internal quotation omitted).   Where a

settlement results from arm's-length negotiations between experienced counsel, "the Court may

presume the settlement to be fair, adequate, and reasonable."  *Lucas*, 234 F.R.D. at 693.  The

proposed Settlement was the result of hard-fought, arm's-length negotiations between highly

experience Lead Counsel (*see* Ex. 2; *see also* Section II.B.4, infra.) and Defendants' Counsel

---

[2]   At the final approval hearing, the Court will have before it extensive papers submitted in support of the proposed Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable and adequate, under all of the circumstances.  At this juncture, however, the Parties request only that the Court grant preliminary approval of the Settlement.

with the assistance of two experienced mediators, Bruce Freedman of JAMS and Judge Phillips. Counsel engaged in several months of formal, in-person and telephonic discussions until eventually agreeing in principle to the Settlement, then worked over the subsequent months to finalize the terms of the Stipulation.

Further, the fact that the Settlement was reached under the supervision of experienced mediators with considerable knowledge and expertise in the field of securities laws demonstrates honest negotiations between the Parties. *See In re Delphi Corp. Sec. Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (speaking of Judge Phillips, "the Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions").

Moreover, the Parties reached the Settlement only after vigorously litigating, conducting discovery, and consulting with experts, as discussed above. All of these circumstances support preliminary approval. *See In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d 1249, 1260 (D. Kan. 2006) (approving settlement reached after parties had briefed class certification and engaged in extensive discovery). Accordingly, the Settlement is a product of informed, fair, and honest negotiations among experienced counsel and is deserving of preliminary approval.

### C. The Outcome of the Litigation Is Uncertain

Lead Plaintiff believes that the claims asserted in the Complaint are meritorious and that the evidence developed to date supports those claims. However, Lead Plaintiff also acknowledges that continuing the Action poses significant risks and additional costs. The Parties have "reasonably conclude[d] that there are serious questions of law and fact that ... could significantly impact" the case, and thus, settlement is a favorable alternative to continued

litigation. *Lucas,* 234 F.R.D. at 693-94; *see also In re Qwest Commc'ns Int'l, Inc. Sec. Litig*., 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009) ("doubt augurs in favor of settlement because settlement creates a certainty of some recovery. . . ").

The risk of material adverse findings against the class is not insignificant. When the Parties reached an agreement, the Court had not yet certified a class, and Defendants had raised arguments regarding when the class period should end in light of corrective information reaching the market in the middle of the proposed class period. In particular, Defendants argued that the proposed class period was too long because any alleged misrepresentations had been corrected before the proposed class ending date of January 17, 2014. How the Court would have ruled on Plaintiffs' class certification motion is unknown but there certainly was a risk that even had the class been certified, the class period may have been substantially shortened.

Further, while Lead Plaintiff believes it could successfully establish all the elements of the securities fraud claims, scienter and falsity present complex issues of proof for the class. *See In re Qwest Commc'ns*, 625 F. Supp. 2d at 1138 ("The accounting issues, the scienter issues, the causation issues, and the damages issues all are complex and problematic. Presenting these issues to a jury would create substantial risks for all parties, including the plaintiffs."); *see also In re Crocs, Inc. Sec. Litig*., No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *8 (D. Colo. Aug. 28, 2013) (preliminary approving settlement after noting the risks plaintiffs would face in certifying a class, surviving summary judgment and winning at trial).

Here, for example, Lead Plaintiff would need to prove that management knew or believed that the Company's statements about its compensation structure in China were false or misleading. Defendants have argued, and would likely continue to argue, that management

8

believed, at all times, that the Company was in compliance with Mainland China's laws and regulations regarding MLM and direct selling. Defendants have consistently pointed out that after the Chinese government concluded its investigation, it found that Nu Skin did not violate China's MLM laws or other laws regarding the Company's compensation structure, and would have argued that the Chinese government's decision on this application of Chinese law to the Company's operations in China should be determinative.

In addition, conducting a full deposition discovery program in this Action would be very challenging and expensive because a number of non-party fact witnesses are located in China. The Parties would be required to conduct discovery through the Convention on the Service Abroad of Judicial and Extrajudicial Documents In Civil Or Commercial Matters (the "Hague Convention") which is often "unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules." *CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, No. 12-CV-08087 (CM)(SN), 2013 WL 2661037, at *11 (S.D.N.Y. June 12, 2013); *see also Yang v. Focus Media Holding, Ltd.*, No. 11 Civ. 9051 (CM) (GWG), 2014 U.S. Dist. LEXIS 126738, at *16-17 (S.D.N.Y. Sept. 4, 2014) (noting that "[i]t can be difficult and sometimes impossible to obtain evidence from China because of its very different regulatory regime governing access to documents and witnesses") (citation omitted). Further, despite being a signatory to the Hague Convention, China does not permit foreign attorneys to take depositions in China; thus, the depositions of any witnesses would require them to travel to Hong Kong or another jurisdiction where depositions are permitted. *See Yung v. Integrated Transp. Network Grp., Inc.*, No. 00 Civ. 3965 (DAB)(HBP), 2001 U.S. Dist. LEXIS 24715, at *46-47 (S.D.N.Y. Sept. 4, 2001) (discussing limitations on deposition testimony in Hong Kong).

This is especially problematic in this Action because several potential witnesses are non-parties. Under the circumstances present here, these depositions may have never taken place.

### D. The Value of a Guaranteed Recovery Outweighs the Possibility of Relief after Protracted and Expensive Litigation

The monetary value of the settlement must be compared to "the possibility of some greater relief at a later time, taking into account the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb v. Wiles,* 11 F.3d 1004, 1015 (10th Cir. 1993). The Settlement Fund of $47 million is more than sufficient, when weighed against costly and time-consuming litigation that would ensue absent settlement.

The $47 million Settlement Amount compares very favorably to other securities class action settlements and exceeds both the average and the median settlement amounts in recent securities class actions. As reported by Cornerstone Research, in 2015 the average settlement amount was $37.9 million and the median settlement amount was $6.1 million. *See* Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons, Securities Class Action Settlements - 2015 Review and Analysis (Cornerstone Research 2016) (Ex. 3, at 1). Further, as a percentage of the best-case recoverable damages, the Settlement also compares favorably to other class action settlements. Lead Plaintiff's consulting damages expert has estimated that the class's best case aggregate damages were approximately $790 million, assuming Lead Plaintiff was successful in establishing that 100% of all five alleged corrective disclosures dates were attributed to the alleged fraud. Under this assumption, the $47 million Settlement would be approximately 6% of the class's best case total estimated losses.

However, as noted above, at class certification Defendants argued that the class period should end after the first corrective disclosure on August 7, 2012 (publication of the Citron

Report).  If this argument had been successful, the class's alleged damages would have been reduced to approximately $45 million.  Alternatively, Defendants argued that the class period should end after the first *People's Daily* article was published on January 15, 2014, which if successful, would have reduced the class's damages to approximately $300 million.

Under any of these scenarios, the Settlement Amount provides a favorable recovery for the Settlement Class.  *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("The Settlement Fund is approximately $40.3 million.  The settlement thus represents a recovery of approximately 6.25% of estimated damages.  This is 'at the higher end of the range of reasonableness of recovery in class actions securities litigations.'"); *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG- JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements") (citation omitted).

### E.   The Judgment of the Parties that the Proposed Settlement Is Fair, Adequate, and Reasonable

Lead Counsel and Defendants reached this settlement after arm's-length negotiations and believe that it represents a good outcome for all Parties.  Defendants will obtain a release of all claims asserted in the Complaint and will avoid the uncertainty associated with trial.  Similarly, Lead Plaintiff and the Settlement Class are guaranteed monetary recovery and avoid the possibility of losing at class certification, summary judgment, or trial.  Against this background,

counsel's opinion "is entitled considerable weight" and supports approval of the settlement. *See Ashley,* 2008 U.S. Dist. LEXIS 13069, at *21 (quoting *Lucas,* 234 F.R.D. at 695).

## II.   THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED

Lead Plaintiff also requests that the Court preliminarily certify the Settlement Class for purposes of settlement. The class consists of: all persons and entities that purchased or otherwise acquired the publicly traded common stock ("Common Stock") of Nu Skin Enterprises, Inc., including call and put options ("Options") on such publicly traded Common Stock, between May 4, 2011 and January 17, 2014, inclusive, and were damaged thereby.[3] This is the same class that was the subject of Plaintiffs' motion for class certification. *See* ECF Nos. 90-92, 94-96. The merits of certification of the proposed class are fully briefed in Plaintiffs' prior submissions. (Given the Settlement, the Court, however, need not determine "whether the class, if tried, would present intractable management problems," since there will be no trial. *Amchem,* 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).) Accordingly, only an overview is provided below.

### A.   The Proposed Settlement Class Meets the Requirements of Rule 23(a)

#### 1.   The Settlement Class Is Sufficiently Numerous

Rule 23(a) provides that a class may be certified if it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Miller v. Basic Research, LLC*, 285 F.R.D. 647, 653 (D. Utah 2010). "To satisfy this requirement, [Plaintiff] need not show that joinder of

---

[3]   Excluded from the Settlement Class are: Nu Skin, M. Truman Hunt, and Ritch N. Wood; the officers and directors of the Company during the Class Period; the immediate family members of any of the foregoing individuals; any affiliate of Nu Skin; any entity in which Defendants have or had a controlling interest; and the legal representatives, heirs, successors or assigns of any of the foregoing excluded persons and entities. Also excluded from the Settlement Class are any Settlement Class Members who properly excluded themselves by submitting a valid and timely request for exclusion.

all members is impossible, only that it is impracticable."  *Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639, 641 (D. Utah 1998).  During the Class Period, Nu Skin had an average of 60 million shares of common stock outstanding that traded on the New York Stock Exchange.  *See* Complaint ¶273.  Because there are likely thousands of class members, the numerosity requirement is met.

### 2.       There Are Common Questions of Law and Fact

"Rule 23(a)(2) requires Plaintiffs to show that questions of law or fact are common to the class, that is, members of the putative class possess the same interest and suffer the same injury." *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 505 (D. Kan. 2014) (quotations omitted). "Commonality requires only one question of law or fact common to the entire class."  *Miller*, 285 F.R.D. at 656.

In this case, common questions of law and fact include, *inter alia*: (i) whether Defendants' publicly disseminated statements during the Class Period omitted and/or misrepresented material facts; (ii) whether Defendants acted with scienter; and (iii) whether the price of Nu Skin common stock was artificially inflated during the Class Period causing damages.  Each Settlement Class Member will have to prove the same elements to establish Defendants' liability, thus the low hurdle of Rule 23(a)(2) is satisfied.

### 3.       The Proposed Class Representative's Claims Are Typical

Typicality requires that the class representative be a part of the class and possess the same interest and suffer the same injury as class members.  *See In re Urethane Antitrust Litig.,* 251 F.R.D. 629, 640 (D. Kan. 2008).  The facts surrounding all claims need not be identical, but the claims of the class representative and the class must be "based on the same legal or remedial theory."  *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988).  Here, Plaintiffs' claims are

virtually indistinguishable from those of the Settlement Class.  Plaintiffs, like all Settlement Class Members, allege that they sustained damages when they purchased Nu Skin securities at inflated prices.

### 4.       Plaintiffs Will Fairly and Adequately Protect the Settlement Class

The adequacy requirement ensures that both the class representative and its counsel (a) do not have impermissible conflicts of interest with the Settlement Class and (b) will vigorously prosecute the action for the Settlement Class.  *See Rutter & Wilbanks,* 314 F.3d at 1187-88. "Adequate representation depends on, among other factors, an absence of antagonism between the representatives and absentees, and a sharing of interest between representatives and absentees."  *In re Crocs, Inc. Sec. Litig*., 2013 WL 4547404, at *8.

Here, Plaintiffs' interests are fully aligned with those of absent class members.  There are no actual or potential conflicts of interests.   Furthermore, Lead Plaintiff State-Boston has actively supervised this litigation and will continue to do so, taking all the steps necessary to ensure that it fulfills its fiduciary obligations to the Settlement Class.  The same is true for named plaintiffs Spring and DuDash, who have also taken an active part in this litigation and monitored it since its inception.

Lead Counsel is qualified, experienced, and able to conduct this litigation.  Indeed, Lead Counsel is a nationally recognized firm that has both successfully litigated numerous securities fraud and complex class action cases.  *See* Lead Counsel's Firm Resume (Ex. 2); *see also In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig*., No. 07-Civ-10453, 2009 WL 50132, at *10

(S.D.N.Y. Jan. 5, 2009) (stating that Labaton Sucharow has "substantial experience in the prosecution of shareholder and securities class actions").[4]

### B.    The Proposed Settlement Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires (i) that the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (ii) that the class action mechanism must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

### 1.    Common Questions of Law or Fact Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.  Predominance is usually present when the action is based on a common course of conduct on the part of defendant." *Id.*  Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [their] claim [is] susceptible to classwide proof,'" just "that common questions 'predominate over any questions affecting only individual [class] members.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (alterations in original). "This requirement is often 'readily met in certain cases alleging consumer or securities fraud.'" *Sprint*, 298 F.R.D. at 506 (quoting *Amchem*, 521 U.S. at 625).

Here, common questions of law and fact predominate over individual questions because Defendants' alleged fraudulent statements and omissions affected all Settlement Class Members

---

[4]   In addition, Lead Counsel satisfies the elements of Rule 23(g).  Lead Counsel has devoted significant effort to prosecuting the claims in this Action and securing this Settlement for Nu Skin investors, avoiding undue expense.  *See* Fed. R. Civ. P. 23(g)(1)(A) (instructing that a court consider the work of counsel done in identifying or investigating potential claims in the action, counsel's experience in handling class actions and other complex litigation, counsel's knowledge of the applicable law and the resources counsel will commit to represent the class).

in the same manner (*i.e.*, through public statements made to the market and documents publicly filed with the SEC.)

Moreover, class-wide reliance is established in this Action through the application of the "fraud-on-the-market" presumption of reliance adopted in *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988). Application of *Basic* dispenses with the requirement that each Settlement Class Member prove individual reliance on Defendants' alleged misstatements and/or omissions. *See id.* at 241-42. The Supreme Court reaffirmed this presumption in *Halliburton II* and *Amgen*, 133 S. Ct. at 1192-93. This theory "holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, material misrepresentations'" and that when an "investor buys or sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014) ("*Halliburton II*") (quoting *Basic*, 485 U.S. at 246-47); *In re Nature's Sunshine Prods. Inc. Sec. Litig*, 251 F.R.D. 656, 661 (D. Utah 2008) (*Basic* "obviates the necessity that a plaintiff prove reliance" and "permits the rebuttable presumption that a plaintiff relied on the integrity of the market price in purchasing his or her shares of stock").[5] In order to be entitled the *Basic* presumption of reliance, the market for the security must be "efficient." *Basic*, 485 U.S. at 248. Here, where Nu Skin's securities are traded on the NYSE, a national securities exchange, there is sufficient evidence of market efficiency.

---

[5] The same presumption exists for Plaintiffs' allegations regarding Defendants' omissions. In *Affiliated Ute Citizens of Utah v. United States*, the Supreme Court held that where a plaintiff alleges "a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." 406 U.S. 128, 153-54 (1972).

### 2.     A Class Action Is Superior Method of Adjudication

A class action is superior where it serves the primary goals of Rule 23, namely, "economies of time, effort, and expense," without sacrificing fairness.  *See Amchem,* 521 U.S. at 615.  "[T]he superiority of class actions in large securities fraud [cases] is well recognized." *Intelcom,* 169 F.R.D. at 149.   In sum, Rule 23(b)(3) is satisfied, and the Court should preliminarily approve class certification.

## III.    THE PROPOSED NOTICE PLAN AND FORMS SHOULD BE APPROVED

The proposed Notice and Summary Notice, attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order, respectively, satisfy due process, the federal rules and the PSLRA. Rule 23(c)(2) requires notice of the pendency of the class action to be "the best notice practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2); *see also In re Crocs, Inc. Sec. Litig*., 2013 WL 4547404, at *12.  To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *De-Julius v. New England Health Care Emps. Pension Fund,* 429 F.3d 935, 944 (10th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).  "Nevertheless, this due process right does not require actual notice to each party intended to be bound by the adjudication of a representative action."  *Id*.

Collectively, the proposed forms of notice describe the terms of the Settlement and the recovery; the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable to all class members; the maximum attorneys' fees and expenses that may be sought; the procedures for requesting exclusion from the Settlement Class and objecting; the procedure for submitting a claim; the proposed Plan of Allocation for

distributing the settlement proceeds to the Settlement Class; and the date and place of the Settlement Hearing.  *See In re Crocs, Inc. Sec. Litig*., 2013 WL 4547404, at *13 (approving notice that provides class members with information regarding anticipated recovery, reasons for the settlement, and the amount of attorneys' fees sought, among other things).  The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia,* stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intend to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) the name, telephone number, and address of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement.  15 U.S.C. §78u-4(a)(7)(A)-(F).

Lead Counsel has agreed to use the traditional methods for notifying class members: notification by mail and by publication in a national newspaper focusing on investors.  Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Notice to Settlement Class Members who can be identified through reasonable effort.  Lead Counsel will also cause the Summary Notice to be published in *Investor's Business Daily* and transmitted over *PR Newswire*.  In addition, the Notice and Proof of Claim form will be made available for viewing and downloading on the settlement website.

The manner of providing notice, *i.e.*, individual notice by mail and additional publication notice, represents the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process.  *See, e.g.*, *DeJulius,* 429 F.3d at 947; *In*

*re Integra Realty Res. Inc.,* 354 F.3d 1246, 1261 (10th Cir. 2004) (finding the notice by publication and mail was sufficient).

Finally, Lead Plaintiff also requests that the Court appoint A.B. Data, Ltd. ("A.B. Data") as the Claims Administrator to provide all notices approved by the Court to Settlement Class Members, to process Proofs of Claim, and to administer the Settlement. A.B. Data has extensive relevant experience and is a nationally recognized notice and claims administration firm. Its staff consists of experienced CPAs, IT specialists and various other professionals with substantial experience in notice and claims administration. *See* Ex. 4.

## IV.    PROPOSED PLAN OF ALLOCATION

At the final Settlement Hearing, the Court will be asked to approve the proposed Plan of Allocation for the Settlement proceeds, which is reported in full in the Notice. The Plan of Allocation was drafted with the assistance of Lead Plaintiff's damages expert. "[A] plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Redwen v. Sino Clean Energy, Inc*., No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at *29 (C.D. Cal. July 9, 2013) (citation and internal quotation marks omitted). Here, the Plan of Allocation reflects the allegations that the price of Nu Skin Common Stock and Options was artificially inflated (or deflated in the case of puts) during the Class Period and that the inflation was removed in reaction to the alleged corrective disclosures. The plan provides for the distribution to eligible claimants based on the amount of alleged artificial inflation reflected in the prices of the securities at the time of purchase and disposition.

Individual claimants' recoveries will depend upon when they bought Nu Skin securities and whether they bought, sold, or held the securities after the Class Period.  Eligible claimants will recover their proportioned amount of the Net Settlement Fund based on their Recognized Claim under the Plan of Allocation.  The Claims Administrator will calculate claimants' Recognized Losses and Lead Counsel will file a motion seeking approval of the claim determinations once the administration of the Settlement is complete.  With respect to a *cy pres* award of any amounts remaining after distributions of the Net Settlement Fund to eligible claimants, the Stipulation does not specify a recipient.  Once it is no longer economically feasible to distribute the Net Settlement Fund, Lead Plaintiff will request Court approval of a recipient.  *See* Stipulation ¶ 6.4.

## V.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff respectfully proposes the following schedule for Settlement-related events:

| | |
|---|---|
| Deadline for mailing individual Notices and Claim Forms (the "Notice Date") | *10 business days after entry of Preliminary Approval Order.* |
| Deadline for publication in *Investor's Business Daily* and transmission over *PR Newswire* | *Within 14 calendar days of the Notice Date.* |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Lead Counsel's application for fees and expenses | *No later than 35 calendar days before the Settlement Hearing.* |
| Deadline for submission of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Hearing.* |
| Deadline for filing reply papers in support of the motions | *No later than 7 calendar days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's convenience, but no fewer than 100 calendar days after the date of the instant motion.* |

| Deadline for submission of Claim Forms | *Postmarked or received no later than 120 calendar days after the Notice Date.* |
|---|---|

## VI.     CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (i) preliminarily approving the Settlement and certifying the Settlement Class; (ii) approving the manner and forms of notice set forth in the Preliminary Approval Order; (iii) setting a date for the Settlement Hearing; (iv) appointing A.B. Data as Claims Administrator; and (v) granting such other and further relief as may be required.

Dated: May 20, 2016                              Respectfully submitted,

                                             /s/  Jonathan Gardner

                                             Jonathan Gardner (*pro hac vice*)
                                             Christine M. Fox (*pro hac vice*)
                                             Guillaume Buell (*pro hac vice*)
                                             **LABATON SUCHAROW LLP**
                                             140 Broadway
                                             New York, New York 10005
                                             Telephone: (212) 907-0700
                                             Facsimile: (212) 818-0477
                                             jgardner@labaton.com
                                             cfox@labaton.com
                                             gbuell@labaton.com

                                             Eric K. Jenkins (10783)
                                             **CHRISTENSEN & JENSEN, P.C**.
                                             257 East 200 South, Suite 1100
                                             Salt Lake City, UT 84111
                                             Telephone: (801) 323-5000
                                             Facsimile: (801) 355-3472

                                             *Counsel for Lead Plaintiff State-Boston Retirement System and the Proposed Class*

## CERTIFICATE OF SERVICE

I certify that on this 20th day of May 2016, I electronically filed Lead Plaintiff's Unopposed Motion Preliminarily Approving Class Action Settlement, Approving Form and Manner of Notice and Setting Date for Hearing on Final Approval of Settlement and Supporting Memorandum using the Court's CM/ECF system, which will be sent electronically to all counsel of record.

/s/ JONATHAN GARDNER
Jonathan Gardner