Jonathan Gardner (*pro hac vice*)
Christine M. Fox (*pro hac vice*)
Guillaume Buell (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jgardner@labaton.com
cfox@labaton.com
gbuell@labaton.com

Eric K. Jenkins (10783)
**CHRISTENSEN & JENSEN, P.C**.
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
eric.jenkins@chrisjen.com

*Counsel for Lead Plaintiff State-Boston Retirement System
and the Proposed Class*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE NU SKIN ENTERPRISES, INC., SECURITIES LITIGATION | Master File No. 2:14-cv-00033-JNP-BCW<br><br>Hon. Jill Parrish |
| This Document Related To:<br>ALL ACTIONS | **LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SUPPORTING MEMORANDUM OF LAW** |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. ii

STATEMENT OF RELIEF SOUGHT AND GROUNDS FOR MOTION ................................. 1

ARGUMENT .................................................................................................................. 4

I.  THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE
    UNDER THE STANDARDS CONSIDERED BY THE TENTH CIRCUIT ...................... 4

    A.  Application of the *Johnson* Factors ................................................................. 5

        1.  The Amount Involved and the Results Obtained ................................. 6

        2.  The Novelty and Difficulty of the Questions Presented ...................... 7

            a.  Risks as to Liability ................................................................. 8

            b.  Risks as to Loss Causation and Damages ................................ 9

        3.  The Skill Requisite to Perform the Legal Services and the Experience
            and Reputation of Lead Counsel Support the Requested Fee ............ 10

        4.  The Customary Fee for Similar Work and Awards in Similar Cases ............... 11

        5.  The Contingent Nature of Lead Counsel's Representation and the
            Undesirability of the Case ................................................................ 13

        6.  The Time and Labor Expended by Counsel ...................................... 16

        7.  The Preclusion of Other Employment Supports the Requested Fee ................ 19

II. PLAINTIFF'S COUNSEL'S EXPENSES WERE REASONABLY INCURRED
    AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION ........................ 19

III. LEAD PLAINTIFF'S EXPENSE REQUEST .................................................... 20

CONCLUSION ............................................................................................................ 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Anderson v. Merit Energy Co.*,
  No. 07CV00916, 2009 WL 3378526 (D. Colo. Oct. 20, 2009)................................................12

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ........................................................................................14

*In re Apollo Grp. Inc. Sec. Litig.*,
  No. 04-2147, 2012 WL 1378677 (D. Ariz., Apr. 20, 2012) ....................................................13

*Bateman, Eichler, Hills Richards Inc. v. Berner*,
  472 U.S. 299 (1985).......................................................................................................15

*Been v. O.K. Indus., Inc.*,
  No. CIV-02-285-RAW, 2011 WL 4478766 (E.D. Okla. Aug. 16, 2011)...........................4, 19

*Billitteri v. Sec. Am., Inc.*,
  No. 11-cv-00191, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) ...........................................11

*In re Bisys Sec. Litig.*,
  No. 04 Civ. 3840, 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ...........................................13

*Blum v. Stenson*,
  465 U.S. 886 (1984).................................................................................................4, 17

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).......................................................................................................4

*Bratcher v. Bray-Doyle Indep. Sch. Dist*. No. 42,
  8 F.3d 722 (10th Cir. 1993) ..........................................................................................19

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) .....................................................................................4, 6

*Bryant v. Avado Brands, Inc.*,
  100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd on other grounds sub nom.,*
  *Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).................................................................8

*Bryant v. Dupree*,
 252 F.3d 1161 (11th Cir. 2001) ...............................................................8

*Campbell v. C.R. England, Inc.*,
 No. 2:13-CV-00262, 2015 WL 5773709 (D. Utah Sept. 30, 2015)..........................................6

*In re Checking Account Overdraft Litig.*,
 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...............................................13

*In re Combustion, Inc.*,
 968 F. Supp. 1116 (W.D. La. 1997)........................................................12

*In re Cont'l Ill. Sec. Litig.*,
 962 F.2d 566 (7th Cir. 1992) ...............................................................14

*In re Crocs, Inc. Sec. Litig.*,
 No. 07-CV-02351, 2014 WL 4670886 (D. Colo. Sept. 18, 2014)........................11, 13, 15, 19

*Devlin v. Scardelletti*,
 536 U.S. 1 (2002)...............................................................................4

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
 586 F. Supp. 2d 732 (S.D. Tex. 2008) ...............................................7

*In re Global Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................20

*Gottlieb v. Barry*,
 43 F.3d 474 (10th Cir. 1994), *overruled on other grounds Devlin v.*
 *Scardelletti*, 536 U.S. 1 (2002) ........................................................4

*Hubbard v. BankAtlantic Bancorp, Inc.*,
 688 F.3d 713 (11th Cir. 2012) ...........................................................10

*Johnson v. Ga. Highway Express, Inc.*,
 488 F.2d 714 (5th Cir. 1974) ................................................... *passim*

*Klein v. O'Neal, Inc.*,
 705 F. Supp. 2d 632 (N.D. Tex. 2010) ...............................................12

*Lane v. Page*,
 862 F. Supp. 2d 1182 (D.N.M. 2012) ......................................6, 10, 11

*Lewis v. Wal-Mart Stores, Inc.*,
 No. 02-944, 2006 WL 3505851 (N.D. Okla. Dec. 4, 2006) ................................12

*Lucas v. Kmart Corp.*,
    No. 99-CV-01923, 2006 U.S. Dist. LEXIS 51420 (D. Colo. July 27, 2006) .........................17

*Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*,
    No. 09-CV-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) .......................18

*In re Marsh & McLennan Co. Sec. Litig.*,
    No. 04-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...........................................20, 21

*McNeely v. Nat'l Mobile Health Care, LLC*,
    No. 07-933, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ..................................12

*Mishkin v. Zynex, Inc.*,
    No. 09–cv–00780–REB–KLM, 2012 WL 4069295 (D. Colo. Sep. 14, 2012).......................18

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)........................................................................................17

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................7

*Peterson v. Mortg. Sources Corp.*,
    No. CIV.A. 08–2660–KHV, 2011 WL 3793963 (D. Kan. Aug. 25, 2011).............................4

*In re Qwest Commc'ns Int'l Inc. Sec. Litig.*
    No. 01-cv-01451, 2006 U.S. Dist. LEXIS 71267 (D. Colo. Sept. 28, 2006)..........................18

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992)........................................................................16

*In re Rite Aid Corp. Sec. Litig.*,
    396 F. 3d 294 (3rd Cir. 2005) ..........................................................................18

*In re Scientific Atlanta, Inc. Sec. Litig.*,
    754 F. Supp. 2d 1339 (N.D. Ga. 2010) ................................................................10

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 Civ. 8831 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)..........................10, 16

*Stalcup v. Schlage Lock Co.*,
    505 F. Supp. 2d 704 (D. Colo. 2007)...................................................................17

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................13

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................15

*In re Thornburg Mortg., Inc. Sec. Litig.*,
    912 F. Supp. 2d 1178 (D.N.M. 2012) ................................................7, 10, 11, 13

*In re United Telecomms. Sec. Litig.*,
    No. 90-2251-0, 1994 U.S. Dist. LEXIS 9151 (D. Kan. June 1, 1994) ..................12

*In re: Urethane Antitrust Litig.*,
    No. 04-1616, 2016 WL 4060156 (D. Kan., July 29, 2016) ..................................12

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...............5

*In re Vitamins Antitrust Litig.*,
    No. 99-197, 2001 WL 34312839 (D.D.C. July 16, 2001) .....................................13

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)...................10

*Williams v. Sprint/United Mgmt. Co.*,
    No. 03-2200, 2007 WL 2694029 (D. Kan. Sept. 11, 2007).................................12

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)..............................................................14, 21

## DOCKETED CASES

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
    No. 07-cv-02830, slip op. (W.D. Tenn. Aug. 5, 2013) ..........................................13

*In re Rhythms Sec. Litig.*,
    No. 02-0035, slip op. (D. Colo. April 3, 2009)......................................................21

*Teichler v. DSC Commc'ns Corp.*,
    CA-3–85–2005–T (N.D. Tex. Oct. 22, 1990).......................................................13

*Tennille v. The Western Union Co.*,
    No. 09-CV-00938-JLK, slip op (D. Colo. Oct. 15, 2014). ...................................12

*In re Tycom Ltd. Sec. Litig.*,
    No. 03-CV-03540, slip op. (D.N.J. Aug. 25, 2010)...............................................13

**Statutes**

15 U.S.C. §78u-4(a)(6) .................................................................................................5

15 U.S.C. §78u-4(a)(4) ...........................................................................................1, 20

**Other Authorities**

Fed. R. Civ. P. 23(h) ...................................................................................................1

Fed. R. Civ. P. 54(d)(2) ..............................................................................................1

## STATEMENT OF RELIEF SOUGHT AND GROUNDS FOR MOTION

Labaton Sucharow LLP, Court-appointed Lead Counsel for Lead Plaintiff State-Boston Retirement System, respectfully submits this memorandum of law in support of (i) its motion, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, on behalf of all Plaintiffs' counsel in the Action, for an award of attorneys' fees and payment of litigation expenses incurred during the course of the Action; and (ii) Lead Plaintiff's application for reimbursement of its reasonable expenses directly related to representation of the Settlement Class, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(a)(4).

After two years of dedicated litigation efforts, Lead Counsel has successfully negotiated a settlement of this class action with Defendants Nu Skin Enterprises, Inc. ("Nu Skin") and its Chief Executive Officer M. Truman Hunt ("Hunt"), and Chief Financial Officer Ritch N. Wood ("Wood") (collectively "Defendants") in the amount of $47 million.[1] As explained in the contemporaneously filed submissions in support of approval of the Settlement, the proposed Settlement represents a recovery for the Settlement Class that exceeds both the median ($6.1 million) and the average ($37.9 million) settlement recoveries in securities class actions in 2015 nationwide, and is an excellent result that is a credit to Lead Counsel's vigorous and diligent prosecution of the claims. Accordingly, Lead Counsel now moves for an award of 29% of the $47,000,000 recovered for the Settlement Class (*i.e.*, $13,630,000), plus accrued interest. In addition, Lead Counsel respectfully requests $448,873.49 in litigation expenses that were reasonably and necessarily incurred in prosecuting this litigation, as well as $9,800 as payment

---

[1] All capitalized terms not defined herein have the same meanings as in the Stipulation and Agreement of Settlement, dated May 2, 2016 ("Stipulation" or "Settlement"). ECF No. 134-1.

of the expenses incurred by Lead Plaintiff in connection with its representation of the class.[2]  All amounts are less than the maximums in the Notice disseminated to Class Members.

A.B. Data, Ltd. ("AB Data"), the Court-appointed Claims Administrator, provided individual notice of the Settlement and the Fee and Expense Application via first-class mail to 178,618 potential members of the Settlement Class whose address was reasonably ascertainable and caused the Summary Notice to be published in *Investor's Business* Daily and to be transmitted over PR Newswire on June 20, 2016 and 22, 2016, respectively.  Ex. 3 ¶¶9-10. Though the deadline for objections is September 14, 2016, to date no objections have been received by Lead Counsel or the Claims Administrator.  *Id.* ¶13.  The Fee and Expense Application also has the full support of Lead Plaintiff State Boston, a sophisticated institutional investor that manages approximately $5.4 billion in assets and has been actively involved throughout the litigation.  Ex. 1.  Lead Plaintiff has been represented by Lead Counsel for approximately ten years and, accordingly, is very familiar with Lead Counsel's experience, expertise, and skill.  Gardner Decl. ¶98.

As set forth in detail in the accompanying Gardner Declaration, it is respectfully

---

[2] The accompanying Declaration of Jonathan Gardner in Support of Lead Plaintiff's Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorney's Fees and Payment of Expenses ("Gardner Decl.") is an integral part of this submission. The Court is respectfully referred to it for a detailed description of the factual and procedural history of the Action, the claims asserted, Lead Plaintiff's and Lead Counsel's investigation and litigation efforts, the negotiations leading to the Settlement, and the fairness and reasonableness of the Settlement and counsel's request for fees and expenses.

All exhibits referenced herein are attached to the Gardner Declaration.  For clarity, citations to exhibits that have internal exhibits will be referenced as "Ex. __-__."  The first numerical reference refers to the designation of the entire exhibit attached to the declaration and the second alphabetical reference refers to the exhibit designation within the exhibit itself.  Exhibits 4-9 are individual declarations of Plaintiffs' counsel detailing their time, lodestars and expenses.

submitted that the recovery obtained for the Class was achieved through the skill, diligence, experience, and effective advocacy of Plaintiffs' counsel.  Counsel's compensation has been contingent upon the result achieved and the Court's approval.  The attorneys' fee request is fair and reasonable when one considers, in particular, the: (1) results obtained; (2) novelty and difficulty of the questions presented by the case and the skill required to litigate it, including the particular difficulties of investigating and ultimately proving misconduct that occurred in part in Mainland China; (3) customary fees within the 10th Circuit; (4) experience and ability of counsel; and (5) time and labor required.

To achieve the recovery, Plaintiffs' counsel devoted substantial time and financial resources to the prosecution of the action for two years.  Lead Counsel conducted a comprehensive investigation into the class's claims, which included interviews of dozens of former Nu Skin employees, independent distributors, and others here in the U.S. and in Mainland China; researched and prepared a detailed Complaint; successfully opposed Defendants' motion to dismiss; fully briefed a motion for class certification; obtained and reviewed approximately 530,000 pages of documents; took six depositions of Company representatives; defended the depositions of its class certification expert and Lead Plaintiff, and took the deposition of Defendants' expert; consulted with experts on damages, multi-level marketing and direct selling in Mainland China; and engaged in a hard-fought settlement process spanning two separate mediations with experienced defense counsel.

For all these reasons, and based on the supporting documentation submitted herewith, Lead Plaintiff and Lead Counsel believe the requested amounts are fair and reasonable, and respectfully request that the Court award them in full.

## ARGUMENT

### I.   THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE UNDER THE STANDARDS CONSIDERED BY THE TENTH CIRCUIT

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The common fund doctrine 'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.'" *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988).[3]

The Supreme Court has suggested that where counsel has created a common fund, an attorneys' fee should be determined on a percentage-of-recovery basis. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' … a reasonable fee is based on a percentage of the fund bestowed on the class"). The Tenth Circuit also recognizes the propriety of the percentage method when awarding fees. In *Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994), *overruled on other grounds Devlin v. Scardelletti*, 536 U.S. 1, 6 (2002), the Circuit Court explained that a percentage method for setting a fee "is less subjective than the lodestar plus multiplier approach," matches the marketplace more closely thus providing better incentive to counsel, and is better suited where class counsel "was initially retained on a contingent fee basis." *Id.*; *see also Peterson v. Mortg. Sources, Corp.,* No. CIV.A. 08–2660–KHV, 2011 WL 3793963, at *12 (D. Kan. Aug. 25, 2011) ("This Court has also typically applied the percentage of the fund method when awarding fees in common fund, FLSA collective actions."); *Been v.*

---

[3] Unless otherwise noted, all internal quotations and citations are omitted and all emphasis is added.

*O.K. Indus., Inc.*, No. CIV-02-285-RAW, 2011 WL 4478766, at *10 (E.D. Okla. Aug. 16, 2011), *report and recommendation adopted by,* No. CIV-02-285-RAW, 2011 WL 4475291 (E.D. Okla. Sept. 26, 2011) ("the Tenth Circuit has stated its preference for the percentage-of-the fund approach in determining the reasonableness of a fee request in a common fund case").

The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the Private Securities Litigation Report Act of 1995 ("PSLRA"), which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). Some courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method in securities class actions. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *3 (S.D.N.Y. Nov. 7, 2007).

Given the Supreme Court's indication that the percentage method is proper in this type of case, the Tenth Circuit's explicit preference of the percentage method, and the language of the PSLRA, it is respectfully submitted that the Court should award Lead Counsel attorneys' fees based on a percentage of the fund.

### A.    Application of the *Johnson* Factors

In assessing the reasonableness of a fee request, the Tenth Circuit has instructed courts to consider the following factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974): (1) the amount involved and results obtained; (2) the novelty and difficulty of questions presented by the case; (3) the skill requisite to perform the legal service properly; (4) the experience, reputation and ability of the attorneys; (5) customary fee; (6)

awards in similar cases; (7) whether the fee is fixed or contingent; (8) the "undesirability" of the case; (9) any time limitations imposed by the client or circumstances;[4] (10) the time and labor required; (11) preclusion of other employment by the attorneys due to acceptance of the case; (12) the nature and length of the professional relationship with the client. *See, e.g., Brown,* 838 F.2d at 454-55; *Campbell v. C.R. England, Inc.*, No. 2:13-CV-00262, 2015 WL 5773709, at *6 (D. Utah Sept. 30, 2015). Rarely are all of the *Johnson* factors applicable. *Lane v. Page*, 862 F. Supp. 2d 1182, 1251 (D.N.M. 2012). An analysis of the *Johnson* factors here demonstrates that the requested fee is fair and reasonable.

### 1. The Amount Involved and the Results Obtained

The proposed $47 million Settlement represents a recovery for the Settlement Class that exceeds both the median ($6.1 million) and the average ($37.9 million) settlement recoveries in securities class actions in 2015 nationwide, and is an excellent result. Ex. 2 at 1.

In terms of potentially recoverable damages, Lead Plaintiff retained an expert to analyze loss causation issues and estimate potential class wide damages. Lead Plaintiff's expert's analysis focused on a series of corrective disclosures that were made during market hours on August 7, 2012 (the Citron Research Report), and before the market opened on each of January 15, 2014 (*People's Daily* articles), January 16, 2014 (announcement of government investigation) and January 21, 2014 (Nu Skin Form 8-K discussing employee violations). Assuming Lead Plaintiff was successful in establishing that 100% of all four alleged corrective disclosure dates were attributable to the alleged fraud (*i.e.*, no disaggregation applied for any confounding information), estimated maximum damages, according to Lead Plaintiff's expert,

---

[4] This factor is not relevant here and as such is not addressed.

would be approximately $790 million. Gardner Decl. ¶7.  As such, the $47 million Settlement represents a gross recovery of approximately 6% of Lead Plaintiff's consulting expert's best case estimated damages — a favorable recovery in light of the countervailing legal and factual arguments and litigation risks. *See, e.g., In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

However, Defendants have argued, in opposing class certification and would likely argue going forward, that the Class Period should be substantially truncated, which would reduce damages to approximately $300 million, or maybe as little as $45 million.  Under Defendants' maximum damage scenario, the $47 million Settlement would represent approximately 16% of recoverable damages, a fantastic result for the Settlement Class. *See In re Enron Corp. Sec., Derivative & ERISA Litig*., 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) ("The typical recovery in most class actions generally is three-to-six cents on the dollar.")  Further, Defendants would also likely argue that confounding information (*i.e*., non-fraud related information) was disclosed to the market on each alleged corrective disclosure date in January 2014 and that it is Plaintiffs' burden to disaggregate any such inactionable information.  Defendants' arguments, if credited by a fact finder, would further reduce the class's aggregate damages. Gardner Decl. ¶8.

For the foregoing reasons, the recovery achieved strongly supports the requested fee.

## 2.   The Novelty and Difficulty of the Questions Presented

There are "few simple class action cases involving securities law," and this case is no exception. *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1253 (D.N.M. 2012).

The Honorable Robert E. Blackburn, United States District Judge for the District of Colorado, has concluded that securities law is "complex and difficult," and noted that the "PSLRA requires great specificity in pleading such claims." *Id.* As one court has noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds sub nom., Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001). Lead Plaintiff faced that very risk in this litigation.

As described in greater detail in the accompanying memorandum of law concerning approval of the Settlement and the Gardner Decl., this litigation involved difficult and complex expert-intensive issues regarding violations of Chinese anti-pyramid and multi-level marketing regulations. The complexity of the issues Lead Counsel had to master in this case were amplified given that most of the conduct occurred in Mainland China and much of the evidence was in Mandarin.  Gardner Decl. ¶¶48, 52.  As highlighted below, there were tangible risks associated with advancing the claims alleged in the Complaint.

### a.  Risks as to Liability

While Lead Plaintiff believes that its claims would be borne out by the evidence, it also recognizes that it faces hurdles to proving liability. Defendants have articulated strong defenses to Lead Plaintiff's allegations, which the Court may have accepted in ruling on class certification or at the summary judgment stage, or which may have persuaded a jury at trial.  For example, to establish 10(b) liability, Lead Plaintiff must demonstrate that Defendants made actionable false or misleading statements or material omissions.  Here, Defendants have always insisted, and would likely have continued to do so at summary judgment and trial, that Lead Plaintiff's

allegations are baseless as demonstrated by an investigation by Chinese authorities that, Defendants claim, did not find any anti-pyramid scheme law or multi-level marketing law violations by Nu Skin. Defendants have further claimed that they disclosed the very facts about Nu Skin's compensation model in public filings that Lead Plaintiff claims were omitted from Class Period statements.  Gardner Decl. ¶¶70-73.

Further, while Lead Plaintiff's investigation developed confidential witnesses and sources of evidence in the U.S. and Mainland China, Defendants would argue that there is no evidence suggesting that management knew or believed that Nu Skin was violating multi-level marketing laws or paying downline commissions in Mainland China.  Scienter is a notoriously difficult and risky element of securities fraud cases.  This is particularly so where the evidence showing such conduct (and the regulations at issue) originated in Mainland China.  *Id.* ¶¶74-76.  Additionally, Lead Plaintiff's class certification motion was pending at the time the Parties agreed to settle and there was uncertainty concerning how the Court would resolve Defendants' arguments to dramatically shorten the Class Period.  *Id.* ¶86.

**b.  Risks as to Loss Causation and Damages**

Issues relating to loss causation and damages were also challenging and would likely have come down to an inherently unpredictable and hotly disputed "battle of the experts," with Defendants' experts focusing heavily on the length of the Class Period and other confounding information.  Gardner Decl. ¶¶79-85.  Proving the full amount of damages was a significant risk in this case. Disentangling the market's reaction to various pieces of news to establish loss causation would have required complicated expert testimony and use of methodologies that are debated among economists. "Proof of damages in complex class actions is always complex and

difficult and often subject to expert testimony." *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8831 (CM)(MHD), 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014).

Here, there existed the very real possibility that a jury could be swayed by experts for Defendants to minimize the class' losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. Thus, even if Lead Plaintiff prevailed as to liability at trial, the judgment obtained could well have been only a fraction of the damages claimed.  "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."  *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  For these reasons, vigorous challenges to loss causation posed a weighty risk to Lead Plaintiff at summary judgment, trial, and on appeal.  *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (plaintiffs' jury verdict in a Section 10(b) securities fraud reversed based on failure to prove loss causation); *In re Scientific Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment on the element of loss causation on the ground that plaintiffs did not meet burden of disentangling the fraud-related and non-fraud-related portions of the stock decline).

**3.   The Skill Requisite to Perform the Legal Services and the Experience and Reputation of Lead Counsel Support the Requested Fee**

*Johnson* factors three and nine are "closely related" and thus often evaluated together. *In re Thornburg Mortg. Inc.* 912 F. Supp. 2d at 1255; *Lane v. Page*, 862 F. Supp. 2d 1182, 1253 (D.N.M. 2012).  Lead Counsel's efforts to efficiently and pragmatically bring this litigation to a successful conclusion are the best indicator of the experience and ability of the attorneys

involved. Lead Counsel is also well regarded nationally for its successful representation of clients in complex class action matters. *See e.g., In re Am. Int'l Grp, Inc. Sec. Litig.*, No. 04-8141 (S.D.N.Y.) (representing the Ohio Funds and reaching proposed settlements of more than $1 billion); *In re Gen. Motors Corp. Sec. and Derivative Litig.*, MDL No. 1749 (E.D. Mich.) (achieving a settlement of $303 million); *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-1500 (N.D. Ala.) (representing New Mexico Funds and achieving settlements valued at approximately $670 million); Ex. 4-D. Lead Counsel brought its skill and experience to this case, thus supporting the requested fee.  "While there are other national and local firms that do securities class actions work, the number of firms doing this work is relatively small, and requires specialized knowledge and skill, and the willingness to front expenses and staff salaries for years." *In re Thornburg Mortg. Litig.*, 912 F. Supp. 2d  at 1256.

In addition, this litigation was vigorously contested by Defendants who were ably represented by very experienced and qualified attorneys from Simpson Thacher & Bartlett LLP. *See Billitteri v. Sec. Am., Inc.*, No. 11-cv-00191, 2011 WL 3585983, at *7 (N.D. Tex. Aug. 4, 2011) ("[B]ecause of the extremely effective work of opposing counsel …. The skill required here … certainly justifies the contemplated award.").

### 4.  The Customary Fee for Similar Work and Awards in Similar Cases

The customary fee for similar work and awards in similar cases are two factors that are often assessed in tandem in the Tenth Circuit. *See, e.g., In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351, 2014 WL 4670886, at *3 (D. Colo. Sept. 18, 2014) In that regard, "[c]ourts in the Tenth Circuit have noted that the typical fee award in complex cases is around one third of the common fund." *id* at *3. (collecting cases); *Lane,*  862 F. Supp. 2d at 1257 ("Fees in the range of 30–40%

- 11 -

of any amount recovered are common in complex and other cases taken on a contingency fee basis"); *Anderson v. Merit Energy Co.,* No. 07CV00916, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009). ("The customary fee to class counsel in a common fund settlement is approximately one-third of economic benefit bestowed on the class."); *McNeely v. Nat'l  Mobile Health Care, LLC*, No. 07-933, 2008 WL 4816510, at *15 (W.D. Okla. Oct. 27, 2008) ("[f]ees in the range of at least one-third of the common fund are frequently awarded in class action cases of this general variety," citing cases and awarding a 33% fee); *Lewis v. Wal-Mart Stores, Inc.*, 2006 WL 3505851,  at *1 (N.D. Okla. Dec. 4, 2006) ("[a] contingency fee of one-third is relatively standard in lawsuits that settle before trial and, given the length and complexity of this lawsuit, it is a reasonable percentage for a contingency fee").

In connection with settlements comparable to, or larger than, the one in this Action, courts within the Tenth and Fifth Circuits frequently award attorneys' fees of 30% or more.  *See, e.g., In re: Urethane Antitrust Litig.,* No. 04-1616, 2016 WL 4060156, at *8 (D. Kan., July 29, 2016) (approving fees of 33⅓% of $835 million settlement fund); *Tennille v. The Western Union Co.*, No. 09-CV-00938-JLK, slip op.[5] (D. Colo. Oct. 15, 2014) (awarding fees of 30% of $135,239,199.14 settlement); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 681 (N.D. Tex. 2010) (awarding fees of 30% of $90 million settlement fund); *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200, 2007 WL 2694029, at *6 (D. Kan. Sept. 11, 2007) (awarding 35% of $57 million common fund); *In re Combustion, Inc.*, 968 F. Supp.  1116, 1142 (W.D. La. 1997) (awarding fees of 36% of $127,396,000 settlement fund); *In re United Telecomms. Sec. Litig.*, No. 90-2251-0 1994 U.S. Dist. LEXIS 9151 (D. Kan. June 1, 1994) (awarding fees of 33⅓% of $28 million

---

[5] A compendium of unreported "slip ops" is submitted herewith as Exhibit 12 to the Gardner Declaration.

settlement fund); *Teichler v. DSC Commc'ns Corp.*, CA-3–85–2005–T (N.D. Tex. Oct. 22, 1990)

(awarding fees of 33⅓% of $30 million settlement fund) (cited in *In re Catfish Antitrust Litig.*,

939 F. Supp. 493, 500 (N.D. Miss. 1996).[6]   Accordingly, it is respectfully submitted that these

*Johnson* factors support the fee request.

### 5.   The Contingent Nature of Lead Counsel's Representation and the Undesirability of the Case

Courts within the Tenth Circuit have recognized that the risk associated with a case

undertaken on contingency is an important factor in determining an appropriate fee award:

> A contingent fee arrangement often weighs in favor of a greater fee because "[s]uch a large investment of money [and time] place[s] incredible burdens upon law practices." *In re Thornburg Mortg. Inc. Sec. Litig.,* 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012) (quotations omitted). "A contingent fee, and the potential for a relatively high fee, is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful." *In re Qwest Comm'cns Int'l Sec. Litig.,* 625 F. Supp. 2d, 1143, 1151 (D. Colo. 2009). Here, Plaintiffs' Counsel was not compensated while prosecuting this action. Counsel invested significant time and money with the substantial risk that the litigation would be unsuccessful.

*In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *4. "Little about litigation is risk-free, and

class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret.*

---

[6] The requested fee also generally comports with fees awarded by courts outside of the Tenth and Fifth Circuits in comparable and larger settlements.  *See, e.g., In re Regions Morgan Keegan Closed-End Fund Litig.,* No. 07-cv-02830, slip op. at 21 (W.D. Tenn. Aug. 5, 2013)(awarding fees of 30% of $62 million settlement); *In re Apollo Grp. Inc. Sec. Litig.*, No. 04-2147, 2012 WL 1378677, at *9 (D. Ariz., Apr.  20, 2012) (awarding fees of 33% of  $145 million settlement fund); *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1358 (S.D. Fla.  2011) (awarding fees of 30% of $410 million settlement fund); *In re Tycom Ltd. Sec. Litig.*, No. 03-CV-03540, slip op. at 8 (D.N.J. Aug. 25, 2010) (awarding fees of 33⅓% of $79 million settlement); *In re Bisys Sec. Litig.,* No. 04 Civ. 3840, 2007 WL 2049726,  at *3 (S.D.N.Y. July 16, 2007)(awarding fees of 30% of $65.9 million settlement); *In re Vitamins Antitrust Litig.*, No. 99-197, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001) (awarding fees of 33.7% of $365 million settlement fund).

*Sys. of La. v. A.C.L.N., Ltd.*, No. 01-11814, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004).

This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel). Here, Lead Counsel pursued the claims in this complex litigation with no guarantee of ever being compensated. In undertaking this responsibility, Lead Counsel dedicated substantial attorney and professional resources to the prosecution of the litigation, and paid the considerable expenses which a case such as this entails. Not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. The financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis and is a deterrent to many firms considering whether to enter such a case. It is also wrong to presume that a law firm handling complex contingent litigation always wins. Indeed, the risk of no recovery in complex cases of this type is very real. As the court in *Xcel* recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Xcel Energy Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d  at 980, 994 (D. Minn. 2005).  Even plaintiffs who get past summary judgment and succeed at trial may find their judgment overturned on appeal or on a motion. *See, e.g., Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *see also* Gardner Decl. ¶¶107-113.

A good example of the risks and delays inherent in securities litigation, even after a jury verdict in favor of the class, is *Jaffe v. Household Int'l, Inc.*, No. 1:02-CV-05893 (N.D. Ill.). In

*Household*, a securities class action filed in 2002, plaintiffs obtained a jury verdict on May 7, 2009 after a month-long trial and seven years of contentious litigation. Because of post-verdict challenges, a judgment was not entered until October 17, 2013, which was then appealed. After 13 years of litigation, and six years after a favorable jury verdict, the Seventh Circuit ruled on May 21, 2015 that the defendants were entitled to a new trial primarily on the issue of loss causation. The case finally settled in June of 2016—14 years after the litigation commenced.

"Federal securities class actions require plaintiffs' counsel to expend substantial time and effort with no guarantee of success. . . In light of these difficulties, 'public policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.'" *In re Crocs, Inc. Sec. Litig.,* 2014 WL 4670886, at *4. The Supreme Court has emphasized that private actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman, Eichler, Hills Richards Inc. v. Berner,* 472 U.S. 299, 310 (1985); *Tellabs Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319 (2007) (noting that the court has long recognized that meritorious private actions to enforce federal securities laws are an essential supplement to criminal prosecutions and civil enforcement actions). In noting the importance of "private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis," one court explained that:

> [C]lass actions serve as private enforcement tools when . . . regulatory entities fail to adequately protect investors . . . plaintiffs' attorneys need to be sufficiently incentivized to commence such actions in order to ensure that defendants who engage in misconduct will suffer serious financial consequences . . . awarding counsel a fee that is too low would therefore be detrimental to this system of private enforcement.

*Shapiro,* 2014 WL 1224666, at *24. Thus, "public policy favors the granting of [attorneys'] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions." *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992).

### 6. The Time and Labor Expended by Counsel

As discussed in detail in the Gardner Declaration, Plaintiffs' counsel have expended substantial time and effort pursuing the claims. *See generally* Gardner Decl. and Exs. 4 – 9, 10 (Summary Table). The Settlement follows two years of litigation that included, *inter alia*:

- conducting a significant legal and factual investigation into Nu Skin, including developing numerous sources of nonpublic information (including internal Nu Skin documents) by locating more than 100 potential witnesses and interviewing 45 individuals who were either former Nu Skin employees, independent distributors, or sales promoters of Nu Skin and other persons with relevant knowledge (both in the U.S. and in Mainland China, using an investigation form located there), which was critical in enabling Lead Plaintiff to overcome the Defendants' motion to dismiss;

- drafting a detailed consolidated amended complaint;

- defeating the Defendants' motion to dismiss and moving for class certification;

- conducting discovery, including receiving and analyzing approximately 530,000 pages of documents produced by Defendants and third parties, deposing six fact witnesses and one expert witness, and defending the depositions of Lead Plaintiff and its market efficiency expert;

- engaging in expert analysis and discovery, including working with consultants and experts to analyze market efficiency, damages, causation, multi-level marketing ("MLM"), and direct selling and MLM in Mainland China; and

- thoroughly vetting both sides' damages assumptions and claims assessment through two separate mediations.

The legal work in the Action will not end with the Court's approval of the proposed Settlement. Additional hours and resources necessarily will be expended assisting members of the Settlement Class, shepherding the claims process, preparing for and appearing at the final

Settlement Hearing, and moving the Court for a distribution order.  Importantly, Lead Counsel does not include this time in its lodestar and will not seek additional fees.

In total, from the inception of this Action through August 5, 2016, Plaintiffs' counsel have expended more than 12,000 hours on the investigation, prosecution and resolution of the claims against Defendants for an aggregate lodestar of $6,827,478.50.   *See* Ex. 10 (Summary Table).  To arrive at a "lodestar" figure, the hours expended are typically multiplied by each timekeeper's respective hourly rate.[7]  The hourly rate to be applied in calculating the lodestar is that which is normally charged in the community where the attorney practices.  *See Blum*, 465 U.S. at 895; *see also Lucas v. Kmart Corp*., No. 99-CV-01923, 2006 U.S. Dist. LEXIS 51420, at *13 (D. Colo. July 27, 2006) ("the relevant community for purposes of determining a reasonable billing rate for Class Counsel likely consists of attorneys who litigate nationwide, complex class actions. . . .")  In addition, the United States Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds.  *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

In determining whether hourly rates are reasonable, a court should take into account the attorneys' legal reputation, experience, and status.  The accompanying declarations of counsel include resumes that provide the background and experience of the firms who worked on this case.  The hourly billing rates of Plaintiffs' counsel here range from $375 to $985 for partners, $550 to $775 for of counsels, and $300 to $725 for other attorneys.  See Exs. 4 – 9; Gardner

---

[7] A lodestar calculation includes time of attorneys and other professionals.  "[T]ime spent by paralegals and support staff properly may be considered as part of the first *Johnson* factor.  Time spent by paralegals and other professionals frequently is billed to clients by the hour, and the assistance of such professionals is indispensable in a case like this case."  *Stalcup v. Schlage Lock Co*., 505 F. Supp. 2d 704, 707 (D. Colo. 2007).

Decl. ¶103.  Exhibit 11, submitted herewith, is a table of billing rates for defense firms compiled by Labaton Sucharow from fee applications submitted by such firms nationwide in bankruptcy proceedings in 2015.  The analysis shows that across all types of attorneys, Plaintiffs' counsel's rates here are consistent with, or lower than, the firms surveyed.

District courts within the Tenth Circuit apply a lodestar "cross-check" to a percentage fee request to assess its reasonableness.  *See, e.g., Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *3 (D. Colo. Dec. 22, 2010); *In re Rite Aid Corp. Sec. Litig.*, 396 F. 3d  294, 306–307 (3rd Cir. 2005). ("[The] lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.")  The cross-check compares counsel's actual lodestar with the amount of the requested fee to determine if the resulting multiplier is reasonable.  As noted, the cumulative lodestar for the services performed by Plaintiffs' counsel is $6,827,478.50.  Lead Counsel is seeking an award of 29% of the Settlement Fund, which equals $13,630,000.  Therefore, the requested fee represents a multiplier of 1.9.

Such a multiplier is within the range deemed reasonable by courts in the Tenth Circuit. In *In re Qwest Commc'ns Int'l Inc. Sec. Litig.* No. 01-cv-01451, 2006 U.S. Dist. LEXIS 71267, at *21 (D. Colo. Sept. 28, 2006), the court explained that "[l]ead counsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure." *See also Mishkin v. Zynex, Inc.*, No. 09–cv–00780–REB–KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting cases from district courts in the Tenth Circuit approving

multipliers ranging from 2.5 to 4.6). "A multiplier of four or less is commonly accepted as reasonable." *See Been v. O.K. Indus., Inc.*, No. CIV-02-285-RAW, 2011 WL 4478766, at *11 (E.D. Okla. Aug. 16, 2011), report adopted, No. CIV-02-285-RAW, 2011 WL 4475291 (E.D. Okla. Sept. 26, 2011). Here, Plaintiffs' counsel invested substantial time and effort to prosecuting the Action to a successful and timely completion, which supports the fee request.

### 7. The Preclusion of Other Employment Supports the Requested Fee

As previously noted, Plaintiffs' counsel spent 12,461 hours litigating this case on behalf of Lead Plaintiff and the class. Gardner Decl. ¶104, Exs. 4-10. This substantial investment of time, with many timekeepers working fulltime on this matter, further supports the requested fee. *See In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *3. ("common sense indicates that the nearly 3900 hours spent litigating this case came at the expense of time that could have been devoted to other matters"). For all the foregoing reasons, Lead Counsel respectfully submits that the requested fee should be awarded by the Court.

## II.   PLAINTIFF'S COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION

In addition to a reasonable attorneys' fee, Lead Counsel respectfully seeks payment in the amount of $448,873.49, plus accrued interest, for litigation expenses incurred in connection with prosecuting the Action. Plaintiffs' counsel have submitted declarations attesting to the accuracy of their expenses. It is well-established that such expenses are compensable in a common-fund case if particular costs are the type normally billed by attorneys to paying clients. *See, e.g., Bratcher v. Bray-Doyle Indep. Sch. Dist.* No. 42, 8 F.3d 722, 725-26 (10th Cir. 1993).

Plaintiffs' counsel's declarations, submitted as Exhibits 4 - 9, itemize the various categories of expenses incurred and Lead Counsel submits that these expenses were reasonably

and necessarily incurred in prosecuting the claims and achieving the proposed Settlement.  Lead
Counsel further submits that these expenses, which include the substantial costs of experts and
consultants (40% of total expenses), mediation fees, costs related to electronic discovery,
investigation fees, electronic legal research, photocopying, postage, working meals and
transportation (any First Class airfare was reduced to economy rates), are the type for which "the
paying, arms' length market" reimburses attorneys and should therefore be reimbursed from the
Settlement Fund.  *In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 468 (S.D.N.Y.
2004); *see also* Gardner Decl. ¶¶122-129.   The Notice advised potential Class Members that
counsel would seek expenses of up $630,000, plus interest.  Ex. 3 - A at 2. The expense request
is well below this "cap."   Accordingly, Lead Counsel submits that the request is fair and
reasonable and should be granted.

## III.        LEAD PLAINTIFF'S EXPENSE REQUEST

The PSLRA, 15 U.S.C. §78u-4(a)(4), limits a class representative's recovery to an
amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to
all other members of the class," but also provides that "[n]othing in this paragraph shall be
construed to limit the award of reasonable costs and expenses (including lost wages) directly
relating to the representation of the class to any representative party serving on behalf of a class."
Here, as explained in the Declaration of Timothy J. Smyth, Executive officer of State Boston
Retirement System, Exhibit 1, Lead Plaintiff is seeking $9,800 in lost wages related to its active
participation in this Action.  Gardner Decl. ¶131.

Many courts have approved reasonable payments to compensate class representatives for
the time and effort devoted by them on behalf of a class.  In *In re Marsh & McLennan Co. Sec.*

*Litig.*, No. 04-8144, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009), the court awarded $144,657 to the New Jersey Attorney General's Office and $70,000 to the Ohio Funds, which was requested "to compensate them for their reasonable costs and expenses incurred in managing this litigation and representing the Class."  The court held that their efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh*, 2009 WL 5178546, at  *21.  Similarly, in *In re Rhythms Sec. Litig.*, No. 02-0035, slip op. (D. Colo. April 3, 2009), the court granted the lead plaintiff's request for reimbursement and awarded $135,084.  *See also In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d at 1000 (awarding $100,000 collectively to eight plaintiffs, for having "fully discharged their PSLRA obligations and … been actively involved throughout the litigation … communicat[ing] with counsel throughout the litigation, review[ing] counsels' submissions, indicat[ing] a willingness to appear at trial …  all to effectuate the policies underlying the federal securities laws").

State-Boston sought to become lead plaintiff in this case to represent the class.  Lead Plaintiff, which produced documents, was deposed, and sent representatives to both mediations, is seeking reimbursement at rates of $80-90 per hour for the 115 hours it spent pursuing the claims on the class's behalf.  Ex. 1 ¶11.  Lead Counsel and Lead Plaintiff submit that the $9,800 sought, based on Lead Plaintiff's active involvement in the Action from inception to settlement at a fair hourly rate, is eminently reasonable and should be granted.

## CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees of 29% of the total recovery of $47,000,000, litigation expenses in the amount of $448,873.49, plus accrued interest, and reimbursement to Lead Plaintiff State Boston in the amount of $9,800.

Dated: August 31, 2016

Respectfully submitted,

**LABATON SUCHAROW LLP**

/s/ *Jonathan Gardner*
Jonathan Gardner (*pro hac vice*)
Christine M. Fox (*pro hac vice*)
Guillaume Buell (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jgardner@labaton.com
cfox@labaton.com
gbuell@labaton.com

Eric K. Jenkins (10783)
**CHRISTENSEN & JENSEN, P.C.**
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 323-5000
Facsimile:  (801) 355-3472
eric.jenkins@chrisjen.com

*Counsel for Lead Plaintiff State-Boston*
*Retirement System and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I certify that on this 31st day of August 2016, I electronically filed Lead Counsel's Motion for An Award of Attorneys' Fees and Expenses and Supporting Memorandum of Law using the Court's CM/ECF system, which will be sent electronically to all counsel of record.


   /s/ *Jonathan Gardner*
Jonathan Gardner